**STATE of Missouri, Plaintiff-Respondent,**

v.

**Rose EVANS, Defendant-Appellant.**

**No. 13942.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 25, 1985.

Motion for Rehearing and to Transfer Denied Oct. 17, 1985.

4. 1984 Cumm.Supp.

David Robards, Joplin, for defendant-appellant.

William L. Webster, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Duane Butler (appearing under Supreme Court Rule 13), Jefferson City, for plaintiff-respondent.

MAUS, Judge.

By Count I of an information, the defendant was charged with selling cocaine on November 5, 1983. By Count II of that information, the defendant was charged with selling cocaine on November 17, 1983. The defense was entrapment, § 562.066, RSMo 1978. A jury found the defendant not guilty on Count I, but guilty on Count II. In accordance with the verdict on Count II, the defendant was sentenced to imprisonment for five years. She presents four points on appeal.

By reason of the verdict, this court must review the case by considering the evidence and all reasonable inferences arising therefrom favorable to the state. *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976), cert. denied, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). So viewed, the following is a summary of the evidence adduced in the state's case in chief.

In the fall of 1983, an undercover officer was employed by the Missouri State Sheriffs' Association to investigate drug traffic in McDonald and Newton Counties. He first worked in McDonald County. On November 4, 1983, he went to Joplin, a part of which is located in Newton County. There he was introduced to Michael Mikus. Mikus worked at a local radio station. He cooperated with law enforcement officers by acting as an informant. The officer learned Mikus had written bad checks in Oklahoma and was the subject of a pre-sentence investigation. The officer was not sure if Mikus' cooperation resulted from a possible charge in Jasper or Newton County involving a sawed-off shotgun. In describing the manner in which Mikus cooperated with him, without contradiction, the officer stated that Mikus was "having a ball." Without objection, and without contradiction, the officer testified that all eight, nine or ten "buys" he made were from people Mikus knew trafficked in drugs.

After meeting with the officer, at about 6:00 p.m. on November 4, 1983, Mikus called the defendant to arrange a purchase of cocaine. This call was followed by several more calls to arrange a time and place. Then, in the early morning hours of November 5, 1983, the parties met at Mikus' apartment. The defendant was accompanied by the man with whom she lived, Richard Garrison. The officer bought a quantity of cocaine from the defendant for $80. Garrison said the cocaine was of good quality, as "he had done some of it earlier."

At the instance of the officer, on November 17, 1983, Mikus again contacted the defendant for the purchase of cocaine. A meeting was arranged for the bar of the Holiday Inn. There, the officer purchased a quantity of cocaine in rock form from the defendant for $100. Later, the officer attempted to arrange for an additional "buy" on December 15, 1983, but the defendant declined.

By her first point the defendant contends the state did not make a submissible case because she introduced substantial evidence that she was unlawfully entrapped into committing the conduct for which she was convicted, and the state failed to introduce evidence to rebut the inference of unlawful inducement. To support that contention, she cites *State v. Horton*, 607 S.W.2d 764 (Mo.App.1980). She emphasizes her testimony to the following effect. She never used cocaine. She made no sales of cocaine other than the two in question. She owned and operated a dance studio. As part of the business, in December of 1983, she was going to present a production of "The Nutcracker." To do so she needed a tape of the music for the ballet. She had become acquainted with Mikus at the radio station. There was available to him at the station the equipment necessary to make such a tape. Mikus said he would do so, but kept putting her off. During

this time, he repeatedly tried to arrange for the purchase of cocaine from her. Finally, she decided to attempt to obtain cocaine to sell to Mikus. In seeking a source, she asked a waitress at a restaurant where defendant ate lunch. The waitress referred her to a man named Richard (not Richard Garrison), who was at the time at a video game in the restaurant. The defendant did not recall if she was introduced to Richard. Nevertheless, within a short period of time she purchased cocaine from Richard which she sold to the undercover officer. She also purchased the second quantity of cocaine from Richard. The only reason she engaged in this activity was that she needed the music tape made for her production of "The Nutcracker."

The defendant called Mikus as a witness. At the time of trial he was in a penitentiary in Oklahoma. In some respects, he corroborated the defendant's testimony.

■ While originally recognized judicially, the defense of entrapment is now codified. § 562.066. That statute has been construed and applied in numerous cases. It has been decisively and succinctly analyzed in *State v. Willis*, 662 S.W.2d 252 (Mo. banc 1983). For the purpose of this opinion, it is sufficient to observe "[t]he statute, § 562.066, requires proof of *both* inducement to engage in unlawful conduct *and* an absence of a willingness to engage in such conduct." *State v. Willis*, supra, at 255.

It is appropriate to initially observe that in arguing the issue, the defendant has pointedly ignored evidence that contradicts and impeaches the allegedly exculpatory evidence of entrapment. The ignored evidence includes the following. The defendant was familiar with terminology used in dealing in cocaine. Mikus failed to explain why he would have discussed the purchase of cocaine with the defendant before he was asked to do so by the undercover officer. More significant is evidence of the conditions in the apartment in which she and Garrison were living at the time of their arrest in that apartment at 12:30 a.m. on December 16, 1983. Those conditions

included the presence of a mirror, razor blade and plastic straw with cocaine residue beside the bed in which the defendant was arrested; the presence of traces of cocaine in a measuring spoon and in a plastic envelope in the kitchen; and the presence of a small glass bottle of cocaine in a second bedroom.

■ This impeaching and contradictory evidence serves to underscore the controlling principle of law stated in *State v. Willis*, supra. However, under that principle, irrespective of the presence or absence of such impeaching and contradictory evidence, the defendant's evidence of entrapment would not defeat the submissible case made by the evidence presented by the state. In this case, as in *State v. Willis*, supra, the state in its case in chief presented no evidence of entrapment. In *State v. Willis*, supra, the defendant testified she made the sale because her nephew told her, among other things, that unless she was able to procure drugs, he would be sent to the penitentiary. In this case, the defendant said, "I felt maybe if I did him a favor, he would return the favor."

As in *State v. Willis*, supra, the fact finder was free to disbelieve the testimony of the defendant. The applicable principle was not altered by the fact she was partially corroborated by Mikus. "This principle also applies where the defendant's entrapment defense is corroborated by other defense witnesses, since the jury may disbelieve any or all of his witnesses." *State v. Willis*, supra, at 256. *State v. Horton*, supra, as cited by the defendant, is one of the progeny of *State v. Weinzerl*, 495 S.W.2d 137 (Mo.App.1973), and is no longer to be followed for that proposition. *State v. Willis*, supra. The defendant's first point is denied.

■ By her second point, the defendant contends the trial court erred in admitting a statement made in her presence by Richard Garrison. The statement was to the effect that "[w]e smoke some pot, we use some coke, but we don't hurt anyone. You didn't catch a big dealer." She argues

that she was under arrest and had no duty to deny or respond to that statement. She apparently bases her contention of error upon cases such as *State v. Elmore*, 467 S.W.2d 915 (Mo.1971).

In presenting this point, the appellant fails to mention the context in which the statement was made. It was made at the time the defendant and Garrison were arrested. Prior to the time this statement was made, she and Garrison were asked if the cocaine discovered was the only drug in the apartment. They *both* replied that it was. She objected to the statement on the basis of hearsay. In stating her objection, she made no mention of the fact she had no duty to respond because she was under arrest. This court need not determine if that basis was incorporated by implication in her hearsay objection. Her objection to this statement was not preserved in the motion for new trial. Rule 29.11(d). The admission of that statement can be reviewed only as plain error. Rule 84.13(c); *State v. Harris*, 620 S.W.2d 349 (Mo. banc 1981). In view of the defendant's admission of the two sales of cocaine, placing that statement in evidence cannot have resulted in manifest injustice. Cf. *Bowman v. Burlington-Northern, Inc.*, 645 S.W.2d 9 (Mo.App.1982).

The appellant's third point is based upon rebuttal testimony of Officer Matthews. Matthews participated in the arrest of defendant and Garrison. He testified to the presence of cocaine in three rooms. This point is predicated upon three bases.

■ The first is that Matthews was not shown to be competent to identify cocaine. Matthews testified concerning his extensive training in seminars and experience in drug investigation and identification. As a result, he concluded that he could recognize on sight certain types of what he believed to be drugs. His testimony identifying the substances found in the three rooms as cocaine was admitted without challenge to his qualifications to make that identification. Under this record, this argument of the defendant is without merit. *State v. Fedrick*, 600 S.W.2d 612 (Mo.App.1980). It

is appropriate to note that it was the defendant who brought to the attention of the jury a laboratory report that confirmed Matthew's identification.

■ The next basis assigned is that such testimony constituted impermissible evidence of the uncharged crime of possession of cocaine. Again, this basis must fail because the defendant made no objection to the testimony for the reason she now assigns. *State v. Cannady*, 660 S.W.2d 33 (Mo.App.1983). Further, on her direct examination, the defendant testified she made no other sales of cocaine and had never used cocaine. The evidence in question squarely rebuts that evidence and impeaches the defendant. The rebuttal evidence went no further than necessary to do so. Cf. *State v. Collins*, 669 S.W.2d 933 (Mo. banc 1984). Also see *State v. Morton*, 684 S.W.2d 601 (Mo.App.1985). In approving the admission of evidence of an uncharged sale of marijuana, it has been succinctly declared, "when a collateral issue is first tendered by the defense in direct examination or is volunteered on cross-examination it becomes a proper subject for rebuttal." *State v. Cheesebrew*, 575 S.W.2d 218, 223 (Mo.App.1978). Also see *State v. Panter*, 536 S.W.2d 481 (Mo.App.1976). The defendant may not escape the force of such cases by her unsupported statement in her brief the cocaine was found in the apartment of her boyfriend. She was asked, "Can you tell us whose apartment it was that you lived in?" She answered, "I'll tell you how *I acquired* the apartment." (emphasis added).

■ Finally, she argues the testimony of Matthews was not proper rebuttal evidence. In her testimony, the defendant denied using cocaine and in dealing in the drug other than the two sales to the officer. Matthews' testimony established drug paraphernalia employed in using cocaine was found by the defendant's bedside. It also established the presence of a measuring spoon and plastic envelopes containing cocaine in the kitchen. It is patent that her final argument on this point is without merit. *State v. Tabor*, 657 S.W.2d 317 (Mo.App.1983).

■ The defendant's fourth and final point is:

The trial court erred in failing to grant the defense motion to strike the testimony of state's witness Matthews with respect to cocaine when it became apparent that the witness was not testifying so as to identify that substance based on his personal knowledge but was testifying from a lab report which had not been disclosed to the defendant....

On cross-examination of Matthews, the defendant used a laboratory report in an attempt to establish that only minimal quantities of cocaine were found in the apartment. The defendant found fault with the report because it did not specify the quantities of cocaine found. The cross-examination did not establish Matthews was not testifying from personal knowledge. But, decisively, examination of the record does not disclose a motion to strike Matthews' testimony upon the basis the defendant now assigns. The point is not preserved and merits no further discussion. *State v. Hughey*, 404 S.W.2d 725 (Mo.1966). The judgment is affirmed.

PREWITT, C.J., and HOGAN, P.J., and CROW, J., concur.