STATE of Missouri, Respondent,

v.

Rhonda Susan DUNAGAN, Appellant.

No. 15823.

Missouri Court of Appeals,
Southern District.
Division One.

June 6, 1989.

Motion for Rehearing Transfer to
Supreme Court Denied June 27, 1989.

Robert P. Baker, Sarcoxie, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Appellant Rhonda Susan Dunagan was found guilty by a jury of selling marihuana, a controlled substance, in violation of § 195.020.1, RSMo 1986. The jury assessed punishment at five years' imprisonment, but added to the verdict a recommendation that appellant "be placed on supervised probation for the entire five year term." The trial court imposed the term of imprisonment assessed by the jury, but denied probation.

Appellant's brief presents seven assignments of error. As the sufficiency of the evidence to support the verdict is unchallenged we recount only the evidence pertinent to the issues on appeal.

Appellant's conviction hinged on the testimony of Stuart McHenry Cornell, who became employed as a Carthage police officer in September, 1985. A year later Cornell was engaged by Chief Ronald E. Hager of the Lamar police department "to work undercover in narcotics" in Lamar when Cornell was not on duty in Carthage.

Cornell was commissioned a Lamar police officer.

In connection with his Lamar duties Cornell met Marion Eugene "Mick" Strong at Onstott's Tavern where Strong's wife, Joyce Marie Strong, was employed. Cornell and another undercover officer purchased marihuana from Mick Strong in September, 1986, and informed him they would be interested in purchasing a larger quantity at a later time.

Cornell testified that in early November, 1986, he made arrangements with Mick Strong for another marihuana purchase. On November 15, 1986, Cornell was furnished $250 by Chief Hager for such purpose. Two days later, around 6:30 or 7:00 p.m., Cornell went to Onstott's Tavern looking for Mick Strong. He was not there, so Cornell asked Joyce Strong where Mick was. Joyce said Mick "was at home at their trailer." Cornell drove to the trailer, "about six or seven blocks west of the Square ... in Lamar."

Mick Strong was at the trailer, alone, when Cornell arrived around "seven or seven-thirty." After conversing with him, Cornell returned to Onstott's Tavern where he told Joyce Strong "that Mick had asked her to call the party that they had talked about previously and tell them that I wanted to make a deal and see if we could work something out." Cornell's testimony continued:

"Q ... And what did Joyce Strong do?

A She went to the phone and picked it up and dialed a number and talked on the phone for a few moments. I heard the name—

MR. BAKER [1]: Object to what he heard as hearsay from Joyce Strong, who is available.

THE COURT: I'm going to overrule the objection.

[Cornell]: I heard at one point her use the name Susie on the telephone. She hung up the phone and indicated that the party she wanted to speak to wasn't there at that time.

---

1. Appellant's lawyer.

MR. BAKER: I still say—may I have a continuing objection?

THE COURT: I'll sustain. I'll sustain that objection."

Some time after the first phone call, according to Cornell, Joyce Strong made a second one. At this point in Cornell's testimony we find the following dialogue, about which appellant complains in her first point (discussed *infra*):

"Q ... [D]id Joyce Strong have a conversation with someone, then, on the telephone this second call?

A Yes, she did.

Q And what was the substance of that conversation?

MR. BAKER: Objection, Your Honor; hearsay.

THE COURT: Court will overrule the objection.

[Cornell]: Spoke with her about purchasing—spoke with the party on the other end of the phone about purchasing some marijuana; indicated to me that the person on the other end of the phone wanted three hundred dollars for the quantity that we discussed and I said I could only offer two hundred and fifty. She spoke back into the phone again and told me that that would be all right and hung up the phone after another, I don't recall, just a few brief seconds of conversation.

Q (By Mr. Ratzlaff [2]) And did you remain in the bar then?

A At that point, yes, I did. Joyce indicated to me—

MR. BAKER: Further objection as hearsay, Your Honor, as to what Joyce indicated to him."

The trial court overruled the objection, whereupon Cornell's testimony continued:

"Q ... This second telephone call Joyce talks to a person, hangs the phone up, and tells you what?

A Tells me to wait; that the party is coming in from Milford and it will be a few minutes before—I believe fifteen to twenty minutes before that person would be there at the bar."

Cornell explained that after some five or ten minutes Mick Strong appeared at Onstott's. A few minutes later appellant arrived and conversed with Mick Strong, after which the two of them departed in a pickup truck. Cornell, per instructions from Mick Strong, waited at Onstott's a few minutes, then drove to Mick Strong's trailer, arriving at "[e]ight o'clock."

Cornell, so he testified, knocked on the door and it was answered by a male "juvenile" whom Cornell did not know. Cornell entered and saw Mick Strong and appellant seated at the kitchen table, on which lay a brown paper grocery sack. Cornell went to the table and sat down. Cornell testified he wanted to confirm the price mentioned earlier so he asked, "Two hundred and fifty dollars?" Appellant, according to Cornell, responded, "Two hundred and fifty dollars, right."

Cornell picked up the paper sack, opened it, and saw a "plastic bread sack" containing what appeared to be marihuana. Cornell then laid $250 on the table. Mick Strong picked up the money. Asked what occurred next, Cornell testified appellant said, "Make sure that I get my half." Cornell added: "[Appellant] said, 'Make sure that I get my half,' she and Mick made eye contact and she said, 'My share.'" Cornell conceded on cross-examination that in his case report he had originally quoted appellant as saying, "Make sure I get my share—I mean, cut."

Cornell, after conversing with Mick Strong "another few moments," took the paper sack (which enveloped the plastic sack and its contents) and departed. He returned to his apartment in Carthage where he sealed the paper sack with tape, initialing and dating the tape and signing his name on the sack.

The next morning Corporal William Patrick Burton of the Lamar police department arrived at Cornell's apartment. Cornell turned the sealed paper sack over to Burton, who immediately took it to the Regional Crime Laboratory at Missouri Southern State College in Joplin. There

2. Prosecuting Attorney of Barton County.

Burton gave the paper sack, still sealed, to Phillip R. Whittle, director of the laboratory and professor of chemistry at the college. Whittle examined the contents—described by him as "plant material"—and determined the material was marihuana weighing 311.6 grams. Whittle's examination required approximately an hour, after which he handed the marihuana, encased in the plastic sack and the paper sack, which in turn had been wrapped in two plastic bags, back to Burton. Burton testified he took the package to Lamar and placed it in the evidence room at the police station. What happened to the package thereafter is the subject of appellant's fourth point, discussed *infra*.

Joyce Strong, called as a witness by appellant, testified that appellant is Mick Strong's sister, and that everybody calls appellant Susie. On cross-examination Joyce Strong disclosed that appellant resided "[o]ut by Milford," some ten or eleven miles from Lamar.

Appellant's first point is:

"The court below erred in allowing over objection the introduction into evidence of hearsay elicited from the State's witness Cornell, because such hearsay, of words purportedly spoken by Joyce Strong and Mick Strong, not in the presence of the [appellant], was employed by the prosecution as substantive evidence of guilt, thereby denying [appellant] her rights under the Sixth Amendment and depriving her of a fair trial, to her prejudice."

■ We first consider the contention that Cornell was improperly allowed to testify as to out-of-court statements uttered by Mick Strong. We learn from the argument following appellant's first point that appellant is complaining about the following passage from Cornell's testimony:

"Q Did [Mick Strong] indicate to you that he thought he could produce this type of marijuana?

MR. BAKER: Objected to, Your Honor. It's hearsay from Mick Strong who's available for the State to call as a witness.

THE COURT: Objection overruled.

[Cornell]: In the course of conversation he indicated that he was able to at different times come into that much marijuana at one time, yeah.

Q ... Then did you talk to him about what type of marijuana?

A We talked several different times and eventually he said he could get some.

MR. BAKER: Objection to what he said. He's in State custody, he can be called.

THE COURT: I think I'll sustain that objection."

According to Cornell, Mick Strong made the above statements after the September, 1986, sale and prior to the sale in question.

Assuming, without deciding, that Cornell's testimony about Mick Strong's statements was inadmissible hearsay, we find no prejudice to appellant. Mick, called as a witness by appellant, disclosed he was incarcerated by the Department of Corrections, having pled guilty earlier to the September, 1986, sale. Mick confirmed that Cornell had come to Mick's trailer November 17, 1986, asking whether Mick could find Cornell some marihuana. Mick testified he told Cornell he (Mick) would try, and to meet him at Onstott's "a little bit later." Mick explained to the jury that he did not drive, having lost his license in 1984, so he started to Onstott's (five or six blocks from his trailer) on foot. En route, according to Mick, he made a call from a public phone to a man he had met two or three times previously, directing the man to take marihuana to Mick's trailer and leave it by the back porch.

Mick testified he then proceeded to Onstott's where he told Cornell what the marihuana would cost. Mick recounted that appellant arrived 20 to 30 minutes later, and she drove him back to the trailer. There, according to Mick, he found the marihuana in a brown paper sack at the designated place. He brought it inside and laid it on the kitchen table while appellant was making coffee. Cornell arrived a few minutes later. Then, according to Mick, appellant went in the bathroom and remained there four or five minutes, during

which Mick sold the marihuana to Cornell. Mick recalled appellant may have returned from the bathroom in time to see him put the money in his pocket. After the sale, said Mick, appellant drove him back to Onstott's where he and she "drank a few beers." Mick avowed he never informed appellant he had sold Cornell marihuana.

Appellant testified that on the evening of November 17, 1986, she received a phone call from Joyce Strong who said Mick wanted appellant "to come in and have a beer and give him a ride." Appellant, so she said, drove to Onstott's alone, arriving between 7:00 and 7:30. She talked to Mick and had a beer. Cornell arrived and talked to Mick. Appellant testified she and Mick thereafter went to his trailer, where she began making a pot of coffee. Appellant told the jury she was at the kitchen table with Mick when Cornell appeared. Asked whether she was introduced to him, appellant answered, "No, sir."

According to appellant, she got up and went in the bathroom where she remained "a few minutes." Appellant acknowledged that when she returned to the kitchen she saw Cornell put a brown paper bag in his coat, and saw money in Mick's hand. She then saw Mick put the money in his pocket. Appellant avowed she received none of the money, there being no reason why she should have.

Only prejudicial error requires reversal of a conviction, *State v. Kurtz,* 564 S.W.2d 856, 861[12] (Mo. banc 1978); harmless error is not grounds for overturning a conviction, *State v. Spica,* 389 S.W.2d 35, 53[32] (Mo.1965), *cert. denied,* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966). Nowhere in the argument of her first point does appellant explain how she was harmed by the hearsay statements of Mick Strong recited in Cornell's testimony. Given appellant's theory of defense, i.e., that Mick Strong alone arranged and carried out the sale to Cornell and that she played no role in it, Mick's statements to Cornell that he (Mick) could at different times come into marihuana were obviously not prejudicial to appellant. If anything, they bolstered her defense. The admission of such statements in evidence consequently affords appellant no basis for reversal.

The other component of appellant's first point is that the trial court erred in allowing Cornell to testify as to out-of-court statements made by Joyce Strong. The segment of Cornell's testimony that is the subject of this complaint has been set forth earlier. It pertains to the second telephone call made by Joyce Strong when Cornell returned to Onstott's after his initial visit at Mick Strong's trailer November 17.

Our first concern is whether the issue has been preserved for appellate review. The only mention of it in appellant's motion for new trial reads:

"The Court erred in permitting over objection the introduction of hearsay elicited from the State's witness Stuart Cornell. Said hearsay, of words spoken by Joyce Strong and by Marion Strong, not in the presence of the Defendant, was employed by the prosecution as substantive evidence to prove elements of the offense, and its admission denied Defendant a fair trial."

Rule 29.11(d), Missouri Rules of Criminal Procedure (19th ed. 1988), provides:

"In jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial.... Where definite objections ... were made during the trial, ... a general statement in the motion of any allegations of error based thereon is sufficient...."

The provisions of Rule 29.11(d) quoted above are virtually identical with Rule 78.07, Missouri Rules of Civil Procedure (19th ed. 1988). In *State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc.,* 375 S.W.2d 92, 95–96 (Mo. 1964), the Supreme Court of Missouri, commenting on a rule then numbered 79.03 (the predecessor of current Rule 78.07), said:

"[A] new trial motion, while it need not state the objection or objections made, or set forth the reason or reasons given therefor, should in all events contain language which calls the trial court's attention to the evidence which forms the basis for the new trial specification of er-

ror.... [T]he very purpose of a motion for new trial is to call the trial court's attention to the errors which a party claims the court has made and to give that court an opportunity to correct them."

In *Hartley v. Matejka*, 585 S.W.2d 240, 242 (Mo.App.1979), the opinion explained that while general allegations in a motion for new trial are sufficient if based upon specific objections made during the trial, the allegations must nonetheless be sufficiently definite to direct the trial court's attention to the particular acts or rulings asserted to be erroneous. That requirement was reiterated in *Bowman v. Burlington Northern, Inc.*, 645 S.W.2d 9, 11[1] (Mo.App.1982). The opinion in *Bowman* held that the appealing party's motion for new trial did not satisfy the threshold requirement of directing the trial court's attention to the particular acts or rulings asserted to be erroneous, hence there was no way for the trial court to ascertain what particular evidence was improperly admitted. *Id.* at 12. Consequently, the claimed errors were not preserved for appellate review. *Id.*

■ In the instant case appellant registered five hearsay objections to statements attributed by Cornell to Joyce Strong. One was sustained; four were overruled. Two of the latter came during Cornell's testimony about the second phone call made by Joyce Strong. As we comprehend appellant's argument of her first point, those are the two rulings about which she complains here.

Nowhere in the paragraph from appellant's motion for new trial, quoted earlier, is the trial court directed to Cornell's testimony about Joyce Strong's second phone call or to the statements Cornell quoted Joyce Strong as having made during it. The motion says only that the trial court erred in permitting over objection the introduction of hearsay elicited from Cornell of words spoken by Joyce Strong. The first of the four overruled objections appears on page 10 of the 256–page transcript. The final overruled objection appears six pages later, and the ruling comes two pages after that.

We hold that appellant's motion for new trial did not sufficiently direct the trial court's attention to the two rulings now attacked by appellant in the portion of her first point regarding hearsay statements of Joyce Strong. Consequently, appellant's complaint was not preserved for appellate review, and is eligible for only plain error consideration. Under that standard, relief will be granted only when the error so substantially affects the rights of an accused that a manifest injustice or miscarriage of justice will inexorably result if left uncorrected. *State v. Sidebottom*, 753 S.W.2d 915, 919–20[3] (Mo. banc 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

In determining whether plain error relief is warranted we begin by considering whether admission of the challenged evidence was error at all. If not, it is obvious no plain error occurred.

Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant. *State v. Harris*, 620 S.W.2d 349, 355[13] (Mo. banc 1981). The State, citing *State v. Pettit*, 719 S.W.2d 474, 476[4] (Mo.App.1986), points out that testimony offered to explain conduct, rather than to prove the truth of the facts testified to, is not inadmissible hearsay. *Accord: State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981).

■ The State maintains that Cornell's testimony regarding Joyce Strong's statements during the second phone call was not used to prove the truth of what Joyce said, but only to explain Cornell's subsequent conduct. Cornell, so he said, was told by Joyce that an offer of $250 would be all right and that the "party" was coming in from Milford and would arrive in 15 to 20 minutes. Those statements, says the State, explain why Cornell waited at Onstott's until Mick Strong, and then appellant, arrived.

Appellant asserts the above statements attributed by Cornell to Joyce Strong were

used as substantive evidence to connect appellant with the marihuana sale. One of the cases relied on by appellant is *State v. Burchett,* 302 S.W.2d 9 (Mo.1957). There the accused was convicted of manslaughter arising from an automobile accident. Over objection a law enforcement officer was allowed to testify the accused was intoxicated according to a blood test. The Supreme Court held the admission of such testimony was prejudicially erroneous. *Id.* at 15. It is clear that in *Burchett* the testimony complained of was utilized as substantive evidence of the accused's intoxication, and not to explain anything the officer did.

The same was true in *State v. Tyler,* 676 S.W.2d 922 (Mo.App.1984), the second case relied on by appellant. There the accused was convicted of attempt to commit first degree robbery. A police officer was allowed to testify about out-of-court statements made to the officer by the victim wherein the victim described the conduct of the accused during the crime. Those statements differed from the victim's own testimony. The appellate court held the admission of the officer's testimony was prejudicially erroneous. No contention was made by the State in *Tyler* that the hearsay was presented to explain the officer's conduct, and it is clear that the officer's actions were not prompted by the victim's statements.

*State v. Kirkland,* 471 S.W.2d 191 (Mo. 1971), is the final case cited by appellant in support of her first point. There the accused was convicted of first degree robbery. The victim, a cab driver, testified he picked up the accused and a female at a particular address and took them to another location, where they were joined by a second man. The cab driver then took the trio to another destination where the two male passengers robbed the driver. A police officer testified he phoned the address where (inferably) the driver had first picked up the accused and the female, and inquired of a "Mrs. Mayo" as to who had called a cab and departed in it. Over objection the officer was allowed to testify that Mrs. Mayo said Pamela Reynolds and Pete Kirkland had gotten into the cab and left.

Officers then went to Pamela Reynolds' residence, arrested the accused (Kirkland), and brought both individuals to the police station where they were identified by the driver. On appeal the accused assigned error in the admission in evidence of the officer's testimony as to what he was told by Mrs. Mayo. The Supreme Court said:

"No other person in the case identified the persons by name who allegedly called for, got into, and left in [the victim's] cab except 'Mrs. Mayo' through the testimony of [the] officer.... When [the officer's] testimony as to what Mrs. Mayo told him is considered with the context of [the victim's] testimony, then it becomes apparent that if the statements attributal to Mrs. Mayo are true, [the accused] was the man who participated in the robbery and Mrs. Mayo's statements are powerful corroborating evidence of identification. If Mrs. Mayo's statements are incorrect, then it is equally obvious that [the accused] is probably not one of the men who robbed [the victim]. The source of the information—the person on whose credit the assertion that [the accused] and Pamela got into the cab depends—was Mrs. Mayo. She did not testify and therefore was not subject to the test of cross-examination.

. . . .

The state has not directed our attention to nor can we discern any legitimate jury issue upon which the questioned evidence would have any bearing except the issue of whether or not the [accused] did, in truth and fact, board [the victim's] cab, as Mrs. Mayo allegedly asserts, and participate in the robbery of [the victim]. As to this issue, the truth of the matter asserted is of prime importance and [the accused] was entitled to cross-examine the person upon whose credit the matter was asserted as being the truth, to wit, Mrs. Mayo. Cross-examination of [the] officer ... on whether, in fact, Mrs. Mayo made the statements would not suffice as a substitute for cross-examination of Mrs. Mayo to test the truth of the statements. [The accused] was denied the right of cross-examination secured by

the confrontation clause of the Constitution of Missouri 1945, Art. I, § 18(a).... The admission of the questioned hearsay constituted prejudicial error." *Id.* at 193–94.

The effect of Cornell's testimony regarding the statements of Joyce Strong during the second phone call in the instant case is substantially different than the effect of Mrs. Mayo's alleged statements in *Kirkland.* Joyce, according to Cornell, said a price of $250 would be all right, and that the "party" was coming in from Milford and would arrive in 15 to 20 minutes. Joyce did not identify appellant as the party to whom Joyce spoke in the second call, nor did Joyce state appellant would be bringing any marihuana. For that matter Joyce did not, according to Cornell, identify appellant as the party to whom Joyce spoke in the *first* call, and as we comprehend the argument under appellant's first point she does not complain about that call. Cornell, it will be remembered, testified that while he heard Joyce use the name Susie during the first call, Joyce indicated the "party" to whom Joyce wanted to speak was not there.

The only incriminatory effect on appellant from Cornell's testimony regarding Joyce's statements during the second call was that the jury could infer appellant was the "party" to whom Joyce was referring, as (a) later evidence showed appellant resided near Milford, (b) appellant arrived at Onstott's some time after the second call, talked to Mick Strong and departed with him, and (c) appellant, according to Cornell, confirmed at Mick's trailer that the price was $250, the sum Joyce had said would be all right during the second call.

In *Kirkland* the incriminatory effect of the hearsay statements of Mrs. Mayo was far greater. There identification of the accused as one of the culprits was the pivotal issue. Mrs. Mayo's hearsay statements identified the accused by name as the man who had initially boarded the victim's cab with Pamela Reynolds, both of whom were subsequently identified by the victim.

We find the instant case more akin to *State v. Pieron,* 755 S.W.2d 303 (Mo.App. 1988). There the accused was convicted for participating in two burglaries on the same night. Two individuals were seen by police fleeing from the site of the second burglary. One (Thaxton) was captured; the other escaped. At the accused's trial a detective was allowed to testify, over objection, that within a couple of hours after Thaxton's arrest he (the detective) received information about the second culprit, that he (the detective) developed information as to who that individual might be, and that he (the detective) obtained the name Mark Pieron (the accused). Affirming the conviction the Eastern District of this Court held such testimony was admissible to explain the detective's subsequent action in showing a photograph of the accused to one of the officers who had observed the fleeing suspect. The opinion explained that the triers of fact can be provided a portrayal of the events in question, which is more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or the reasons for the officer's subsequent activities. *Id.* at 307. The opinion emphasized that the questioned testimony was relevant and admissible to explain the commencement of the police investigation of the accused, and was not offered to show that the information received was true. *Id.*

Here Joyce Strong's phone calls were links in the chain of events leading to the marihuana sale at Mick Strong's trailer. Cornell's recitation of Joyce's statements during those calls allowed the jury to understand why Cornell waited at Onstott's until the arrival of Mick Strong, and then until the arrival of the "party" who turned out to be appellant. It is thus arguable that Cornell's testimony as to Joyce Strong's statements during the second call was admissible under *Pieron, Pettit,* 719 S.W.2d 474, and *Brooks,* 618 S.W.2d 22.

It is not, however, necessary to decide that question because, as emphasized earlier, the matter is before us for plain error review only. In *State v. Evans,* 699 S.W.2d 109 (Mo.App.1985), the accused was convicted of selling cocaine. An officer

testified that at the time of the accused's arrest a man with whom the accused had been living stated, in the accused's presence: "[W]e smoke some pot, we use some coke, but we don't hurt anyone. You didn't catch a big dealer." Prior to the statement the accused and her companion were asked if the cocaine discovered in their apartment at the time of the arrest was the only drug there. They both replied that it was. At trial the accused admitted making the sale, but testified she made it because the buyer had promised to supply her an item she needed. On appeal the accused maintained that the officer's testimony regarding the companion's statement was hearsay, and that its admission constituted reversible error. This Court held that the objection was not preserved for appellate review, and was thus eligible for only plain error consideration. Affirming the conviction, the opinion concluded that in view of the accused's admission of the sale, placing the statement in evidence could not have resulted in manifest injustice. *Id.* at 113.

In the instant case the most incriminating evidence against appellant was her presence with Mick Strong at the kitchen table on which the sack of marihuana lay, coupled with her statement to Cornell confirming that the price was $250, and her statement to Mick Strong when Cornell put the money on the table, "Make sure that I get my half—my share." Even if the receipt in evidence of Cornell's testimony as to Joyce Strong's statements during the second phone call was error—a hairline issue we do not decide—we hold that in view of the more compelling evidence against appellant (the statements attributed to her by Cornell at the time of the sale) the admission in evidence of Cornell's testimony as to Joyce's statements during the second call did not result in manifest injustice or a miscarriage of justice. Appellant's first point is denied.

■ Her second point reads:

"The court below erred and abused its discretion by refusing to declare a mistrial when the State's witness, Cornell, upon cross-examination volunteered that he 'was under the impression that the person coming in to meet with Mick was going to be bringing the marijuana,' because such statement was not responsive to the question asked, was deliberately and intentionally made, was likely to prejudice the jury, was wholly [sic] conclusory, and was employed at least by insinuation in the State's closing argument, in consequence of which the [appellant] was prejudiced."

During cross-examination of Cornell appellant's lawyer referred to the juvenile who answered the door at Mick Strong's trailer when Cornell arrived the second time on November 17, 1986. Then, this:

"Q Now, when you did this kind of work you are very careful to identify all of the participants, were you not?

A Yeah. But I didn't ask for driver's licenses. That would have been, you know—

Q That would have been best, I understand. But you used police facilities to find out who a particular person was, didn't you?

A When it seemed relevant, yes.

Q Okay. Well, now, it certainly seemed relevant and you mentioned to the jury on direct examination it seemed relevant for you to check on the tag numbers on the vehicle that [appellant] used to drive her brother? You did that, didn't you?

A I was under the impression that the person coming in to meet with Mick was going to be transporting the marijuana."

Appellant's lawyer immediately moved for a mistrial on the ground that the last answer was "a volunteered statement, totally unresponsive and highly prejudicial and no way to remove it." The trial court denied the motion but, at appellant's request, instructed the jury "to not consider the last statement as a voluntary statement or answer given by this witness and also order that it's stricken from the record." The trial court also admonished Cornell not to volunteer any statements other than in response to the questions.

In final argument the prosecutor maintained it could be inferred that appellant

brought the marihuana from Milford, where she lived, to Onstott's, and from there to Mick Strong's trailer where the sale was made. Appellant insists that the only "evidence" from which that inference could arise was the last answer by Cornell set forth above.

We disagree. Had the marihuana been at Mick Strong's trailer when Cornell was there the first time on November 17, 1986, there would have been no reason for Mick to send Cornell back to Onstott's with instructions to tell Joyce to call the party they had talked about previously and tell such party Cornell wanted to make a deal and see if something could be worked out. After Joyce made the two calls Mick Strong arrived at Onstott's. When appellant arrived later Cornell saw appellant and Mick Strong converse, and was then told by Mick to come to the trailer in a few minutes. When Cornell entered the trailer appellant and Mick were seated at the kitchen table, on which lay the paper sack containing the marihuana. Appellant, according to Cornell, confirmed the $250 price and made the statement about getting her half or share.

The jury could properly infer from the above evidence that appellant was the person who had transported the marihuana. Cornell's answer that he was under the impression that the person coming to meet Mick was going to be transporting the marihuana was not, therefore, the only evidence from which the above inference could have been drawn.

Furthermore, Cornell's response was arguably not as egregious as appellant appears to believe. On direct examination Cornell testified he wrote down the license number of the pickup in which Mick Strong and appellant departed Onstott's. Given the context of the cross-examination during which Cornell gave the answer complained of by appellant, Cornell may well have been undertaking to explain he did not check the ownership of the pickup because he assumed the driver (appellant) was the person delivering the marihuana, hence ownership of the pickup was unimportant.

In any event, granting a mistrial is a drastic action and should be exercised only in those circumstances where no other curative action would remove the prejudice claimed. *State v. Morris*, 639 S.W.2d 589, 593 (Mo. banc 1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). It is a matter within the discretion of the trial court, as the trial judge is in the best position to assess the necessity of a mistrial. 639 S.W.2d at 593[9]. Absent an impermissible abuse of discretion, this Court will not interfere with the trial court's denial of a mistrial. *Id.* at [10]. Inasmuch as there was ample evidence apart from the answer complained of to support an inference that appellant had transported the marihuana, we hold the trial court did not abuse its discretion in denying appellant a mistrial. Appellant's second point is denied.

We next address appellant's fourth point. It reads:

"The court below erred in admitting into evidence, over objection, the State's exhibit 2, an unmarked plastic bread sack containing marijuana, because it was demonstrated that the exhibit had been confused with other evidence, may well not have pertained to the present case at all, and there were unexplained breaks in the purported chain of custody of the exhibit of sufficient magnitude to cast reasonable doubt upon its identity and lack of tampering, in consequence of which admission [appellant] was prejudiced."

At trial the paper sack picked up by Cornell from the kitchen table at Mick Strong's trailer on November 17, 1986, was designated State's exhibit 1, and was identified by Cornell by the markings he had placed on it that date. As recounted earlier, Cornell kept the paper sack (which encased the plastic sack containing the marihuana) in his possession until the next morning (November 18), when he turned the package, intact, over to officer Burton, who took it to the laboratory where director Whittle examined the contents and determined they were marihuana. The marihuana (minus .4 gram consumed in testing) was then put back into the plastic

sack, which in turn was placed in the paper sack, and the latter was then wrapped in two plastic bags. Burton then took the package to Lamar and placed it in the evidence room at the police station. At trial appellant made no complaint about the handling of the paper sack and its contents from the time Cornell took possession at the trailer until the time the package was placed by Burton in the evidence room. As we understand the argument under appellant's fourth point, it is what happened to the package thereafter that supplies the basis for the fourth point.

Chief Hager testified he and Burton had "joint custody" over the "evidence locker," a secured room to which Hager and Burton had keys. Hager explained that on November 19, 1986—the day after Burton had placed the package in the locker—he (Hager) needed a quantity of marihuana for a "drug operation" in which his department was participating. Hager decided to use the marihuana purchased by Cornell in the instant case for that operation. Hager narrated:

> "I separated the marijuana along with the witness in the room, Sheriff Bill Griffitt, and while I was attempting to call [the Barton County Prosecuting Attorney's] office to kind of touch base with [the prosecutor] we separated it, weighed it, I resecured it in the evidence locker, talked to [the prosecutor] that afternoon, and we decided not to go through with that type of an operation. On the morning of the 20th when I could get Sheriff Griffitt back in the room I brought the bags back in, recombined them, resealed them, and on the following day, the 21st, had Officer Burton return it to the lab to have it reweighed and retested because I had opened it and separated it."

Director Whittle testified State's exhibit 1 (the paper sack), together with the plastic sack (designated State's exhibit 2 at trial) and 309.4 grams of plant material were brought to the laboratory by Burton November 21, 1986. Whittle tested the material and determined it was marihuana. Hager testified he picked up the marihuana at the laboratory December 17, 1986, and returned it to the evidence locker at Lamar.

Cornell, during his testimony, identified State's exhibit 2 as the plastic sack that had contained the marihuana inside State's exhibit 1 (the paper sack) at the time he made the purchase at the trailer. Cornell conceded he had placed no identifying mark on State's exhibit 2.

During the State's case the prosecutor offered in evidence State's exhibit 2 containing "stuff" which appellant conceded was marihuana. Appellant objected to State's exhibit 2 and its contents on the ground that "we've got a serious break here in the chain of evidence" and "the break occurs at Hager." The trial court overruled the objection and received State's exhibit 2 and its contents in evidence.

If appellant's fourth point does not violate Rule 30.06(d), Missouri Rules of Criminal Procedure (20th ed. 1989), it comes perilously close in that it fails to state wherein and why the evidence demonstrated State's exhibit 2 had been confused with other evidence, and why the exhibit may not have pertained to the instant case. The point further fails to identify the "unexplained breaks in the purported chain of custody." In an effort to learn the gist of the point we have searched the argument thereunder, a task we are not obliged to undertake, *State v. Gamble*, 649 S.W.2d 573, 576[4] (Mo.App.1983), and have noted the following passage: "[T]he nub of the argument is whether ... the prosecution carried its burden of demonstrating that State's Exhibit # 2 was identical to the material originally obtained by Cornell from Mick Strong, unchanged and untampered with." Appellant's reply brief says the whereabouts of the marihuana between the time Hager "separated" it on November 19, 1986, and the time he "recombined" the bags the next day are unknown.

We do not interpret the evidence that way. While Hager's testimony is not as precise as it might have been, it is fairly inferable that after Hager "separated" the marihuana November 19, he secured it in the evidence locker where it remained until the next morning, at which time he retrieved it and recombined it in the original

plastic sack, which he then placed in the paper sack.

In order to receive testimony showing the results of tests performed on articles it is necessary to satisfy the court not only as to the identity of the articles, but also that they were in the same condition when tested as when originally obtained. *State v. Myers*, 351 Mo. 332, 172 S.W.2d 946, 949 (1943); *State v. Scott*, 647 S.W.2d 601, 607[8] (Mo.App.1983). The prevailing law in this state is that the evidence must provide reasonable assurance that the exhibit sought to be introduced is the same and in like condition as when received. *State v. Fels*, 741 S.W.2d 855, 857 (Mo.App.1987); *Scott*, 647 S.W.2d at 607. The chain of custody must be sufficiently traced so there is reasonable assurance that the exhibit offered has not been substituted for the original item seized, or that such item has not been tampered with or contaminated. *State v. Weber*, 768 S.W.2d 645, 648 (Mo.App.S.D.1989).

Here, Whittle testified that his first examination of the contents of State's exhibit 2 (November 18, 1986) revealed they were marihuana. Appellant makes no complaint about the chain of custody up to that point. Whittle's second examination of the contents of State's exhibit 2 (November 21, 1986) again revealed they were marihuana.

Appellant underscores the fact that the marihuana weighed 311.6 grams at the time of the first examination, and only 309.4 grams the second time. Whittle testified, however, that .4 gram was consumed in the first test, and that the remaining weight loss (1.8 grams) could be attributed to loss of moisture. Additionally, Whittle testified State's exhibit 2 had holes in it, as a result of which "I have plant material on the chair and on my clothing."

While Hager's actions of November 19 and 20, 1986, are hardly a textbook example of the proper technique in handling evidence, we hold that there was reasonable assurance that State's exhibit 2 and its contents were the same and in like condition when Whittle examined the contents the second time as they were when Cornell obtained possession at the trailer. The trial court therefore did not err in receiving State's exhibit 2 and its contents in evidence. Appellant's fourth point is denied.

The next point we consider is point six, wherein appellant maintains the trial court erred in refusing to instruct the jury on the defense of entrapment. Appellant insists there was evidence upon which the jury could reasonably have found that the proposal for the marihuana sale originated in the mind of Cornell or Mick Strong while, at the same time, there was no evidence that appellant had a predisposition to commit the offense.

Appellant misunderstands the defense of entrapment. An accused is entrapped only if a law enforcement officer or an agent acting for law enforcement authorities induces the accused to engage in conduct of a criminal nature when the accused was not ready and willing to engage in such conduct. § 562.066, RSMo 1986; *State v. Willis*, 662 S.W.2d 252, 255 (Mo. banc 1983); *State v. King*, 708 S.W.2d 364, 367[1] (Mo.App.1986).

It is manifest in the instant case that Cornell did nothing to induce *appellant* to sell marihuana, as all he did was present himself to Mick Strong as a potential marihuana buyer and tell Joyce Strong he (Cornell) could offer only $250. It is equally clear that Mick Strong was not acting as an agent for any law enforcement agency at the time of the sale; consequently, any inducement from him to appellant would not support an entrapment defense. Appellant's sixth point is without merit.

Appellant's seventh point attacks instruction 5, the verdict-directing instruction.[3]

3. Instruction 5 read:
"A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.
If you find and believe from the evidence beyond a reasonable doubt:

Instruction 5 was a combination of MAI–CR 3d 304.04 and 332.06. Form 304.04 is used when the evidence shows that the defendant acted together with another person in the commission of an offense or in any manner aided another person in the commission of an offense. MAI–CR 3d 304.04, Notes on Use 6, 1–1–87. MAI–CR 3d 304.04 reads:

"A person is responsible for his own conduct and he is also responsible for the conduct of (another person) ... in committing an offense if he acts with (him) ... with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person(s) in committing it.

... (If) you find and believe from the evidence beyond a reasonable doubt:

First, that ... (on or about) [date], in the ... (County) of ____, State of Missouri, [Continue using the paragraphs from the MAI–CR 3d verdict director applicable to the offense and set out all the elements of the offense, ascribing the elements to the defendant or other person ... with whom the defendant acted.... Place a comma at the end of the last paragraph submitting the elements of the offense. Then add the following:]

then you are instructed that the offense of [name of offense] has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

(Second) (Third) ([next numbered paragraph]), that with the purpose of promoting or furthering the commission of that [name of offense], the defendant ... (acted together with or aided) [name(s) of other person(s) ...] in committing that offense, ...

then you will find the defendant guilty...."

MAI–CR 3d 332.06, the form for a verdict-directing instruction on sale of a Schedule I or II controlled substance, reads:

"... (If) you find and believe from the evidence beyond a reasonable doubt:

First, that ... (on or about) [date], in the ... (County) of ____, State of Missouri, the defendant [Insert one of the following. Omit brackets and number.]

.    .    .    .    .

█ sold (marihuana) ... to [name of person],

.    .    .    .    .

and

Second, that defendant knew that he ... (sold it) ..., and

Third, that defendant was aware of the nature and character of the substance,

then you will find the defendant guilty ... of ... (selling marihuana)...."

To grasp appellant's complaint on instruction 5 one must note that paragraph "Second" of MAI–CR 3d 332.06, quoted above, requires the jury to find that the defendant "knew that he sold it." When MAI–CR 3d 304.04 (quoted earlier), is used—as it was here—paragraph "First" of 304.04 must set out all the elements of the offense, ascribing the elements to the defendant or other person with whom the defendant acted. An examination of in-

First, that on or about the 17th day of November, 1986, in the County of Barton, State of Missouri, the defendant, Rhonda Susan Dunagan, or Marion Strong sold marijuana to Stuart Cornell, then you are instructed that the offense of selling marijuana has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Second, that with the purpose of promoting or furthering the commission of that selling marijuana, the defendant, Rhonda Susan Dunagan, acted together with or aided Marion Strong in committing that offense, and

Third, that the defendant, Rhonda Susan Dunagan, was aware of the nature and character of the substance,

then you will find the defendant, Rhonda Susan Dunagan, guilty of selling marijuana.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant, Rhonda Susan Dunagan, not guilty of that offense.

If you do find the defendant, Rhonda Susan Dunagan, guilty of selling marijuana, you will assess and declare one of the following punishments:

1. Life imprisonment;

2. Imprisonment for a term of years fixed by you, but not less than five years."

struction 5[4] reveals that paragraph "Second" of MAI–CR 3d 332.06 does not appear anywhere in instruction 5.

Appellant's seventh point, as we comprehend it, maintains that the omission of paragraph "Second" of MAI–CR 3d 332.06 from instruction 5 was prejudicially erroneous, as criminal liability of appellant was predicated on a sale by Mick Strong, hence the omission eliminated appellant's defense that she was unaware of what Mick was doing at the time he sold the marihuana to Cornell.

The only paragraph in appellant's motion for new trial assigning error in instruction 5 reads:

"The Court erred in giving over objection the prosecution's verdict director, Instruction No. 5, because there is an MAI Cr3d Instruction precisely on point, the use of which is mandatory where the Defendant is charged as a principal with the sale of marijuana. Instruction No. 5 was further erroneous in that it improperly mixes and modifies two instructions from MAI Cr3d which, if given at all, should have been given separately."

Rule 28.03, Missouri Rules of Criminal Procedure (19th ed. 1988), provides:

"A party may, but is not required to, object specifically or generally on the record ... to instructions ... to be given at the request of any other party.... However, specific objections to given ... instructions ... shall be required in motions for new trial unless made on the record at the time of trial...."

Nowhere in the record do we find any objection by appellant at time of trial to the omission of paragraph "Second" of MAI–CR 3d 332.06 from instruction 5. As appellant failed to object at trial or in her motion for new trial to instruction 5 on the ground now advanced in her seventh point, the point has not been preserved for appellate review. *State v. Gannaway*, 649 S.W.2d 235, 240[15] (Mo.App.1983). Consequently,

any relief granted on appeal would be for plain error only.

Instruction 5 told the jury that a person is responsible for his own conduct and is also responsible for the conduct of another in committing an offense if the former acts with the latter with the common purpose of committing such offense, or if, for the purpose of committing such offense, the former aids or encourages the latter in committing it. Instruction 5 required the jury to find, in order to convict appellant, that she or Mick Strong sold marihuana to Cornell, that she, with the purpose of promoting or furthering the commission of such offense, acted together with or aided Mick Strong in committing it, and that she was aware of the nature and character of the substance.

If appellant, with the purpose of promoting or furthering the sale of marihuana on the date in question, acted together with or aided Mick Strong in making the sale, and if appellant was aware that the substance to be sold was marihuana, she is guilty of selling marihuana even if she was not at the kitchen table when the sale occurred and consequently was unaware that the sale had been consummated. *See: State v. Slade*, 338 S.W.2d 802, 805–06[4]–[6] (Mo.1960); *State v. Crews*, 585 S.W.2d 131, 135[5] n. 2 (Mo. App.1979). That being so, the failure of instruction 5 to hypothesize that appellant knew Mick Strong sold the marihuana did not result in manifest injustice or a miscarriage of justice. Appellant's seventh point is denied.

We next address appellant's fifth point, which attacks the trial court's reading of the verdict-directing instruction.

The trial court began reading the instruction and reached the point in paragraph "First" where it says "the defendant...."[5] At that point the trial court read "the Defendant or—." The trial court thereupon paused and, after a conference with coun-

---

**4.** Footnote 3, *supra.*

**5.** Footnote 3, *supra.* The verdict-directing instruction the trial court was then reading was

not identical to the instruction in footnote 3 that was ultimately given, as explained more fully *infra.*

sel about the fact that paragraph "First" did not set forth the name Rhonda Susan Dunagan after the word defendant, undertook to read the instruction again, starting at the beginning.

This time the trial court added the name Rhonda Susan Dunagan where it had been omitted in paragraph "First," and continued reading until reaching the point where the instruction said "then you will find Rhonda Susan Dunagan guilty of selling marijuana." At that point the trial court continued to read, saying "unless you find that Rhonda Susan Dunagan—." The trial court then paused and conferred again with counsel, pointing out (outside the hearing of the jury) that the instruction from that point on was phrased so as to submit the issue of entrapment. The trial court informed the jury there would be a recess because instruction 5 would have to be retyped.

During the recess appellant's counsel moved for a mistrial, maintaining the jury had been "badly confused by what has just happened." The trial court denied the motion.

The jury returned and the trial court read instruction 5 anew, starting at the beginning. This time, when the trial court reached the paragraph beginning "If you do find the defendant, Rhonda Susan Dunagan, guilty," the trial court read:

"If you do find the Defendant, Rhonda Susan Dunagan, guilty of selling marijuana you will assess and declare the following punishment: 1) life imprisonment; 2) imprisonment for a term of years fixed by you but not less than five years."

Appellant's lawyer, outside the hearing of the jury, pointed out to the trial court that the above passage was erroneous in that the jury should have been instructed to "assess and declare one of the following punishments," *either* life imprisonment *or* imprisonment for a term of years fixed by the jury, but not less than five years. Appellant's lawyer again moved for a mistrial, this time expressing concern that the jury may be mad at him. The trial court denied the motion but, at appellant's request, told

the jury that instruction 5 was prepared by the State and was going to have to be redone again because it was incorrect. The trial court added that the defense had nothing to do with the instruction.

Another recess was taken, during which the trial court supplied counsel another version of instruction 5 which the trial court proposed to give. Appellant's lawyer moved for a mistrial, arguing that another reading of the verdict-directing instruction would unduly emphasize it. The trial court denied the motion but, at appellant's request, made this announcement to the jury when proceedings resumed: "Ladies and Gentlemen, the two prior errors were the State's fault and not the Defense fault." The trial court then read instruction 5 as it appears in footnote 3, *supra*, along with the remaining instructions.

Appellant's fifth point is:

"The court below erred by reading, upon four separate occasions, in whole and in parts, several variations of different verdict directors submitted by the prosecution, because such multiple readings tend to be confusing and to lay undue emphasis upon a particular instruction or part thereof, to the [appellant's] prejudice, and in refusing to declare a mistrial after such repeated and garbled readings."

Neither party cites a Missouri case factually similar to the instant case. In *State v. Amos*, 553 S.W.2d 700, 705 (Mo. banc 1977), the Supreme Court of Missouri noted that situations can easily be foreseen where a trial court may inadvertently fail to give a required instruction at the outset, realize it a few minutes later, and recall the jury and give the instruction. *Amos* states prejudice would not necessarily result but would depend upon the circumstances under which the new verdict-directing instruction was given and would have to be judged on a case-by-case basis. *Id.*

Here the first error was discovered when the trial court had read less than one-third of the verdict-directing instruction, and there was no error in anything the trial court had read up to that point. When the trial court began anew, approximately two-

thirds of the instruction were read before the second error was discovered. On that occasion the trial court stopped before reaching the reference to entrapment, so again there was nothing incorrect in anything the jury heard.

On the third reading the trial court completed the instruction before appellant's lawyer pointed out the error in the paragraph concerning punishment. In the fourth (and final) reading, the punishment segment was correct.

The trial court, as observed earlier, made it clear to the jury that the problems with instruction 5 were not attributable to appellant or her lawyer. Furthermore, the only error in instruction 5 that was actually read to the jury was the paragraph regarding punishment, read during the third attempt and then corrected for the final reading. As the jury not only assessed the minimum authorized punishment (five years' imprisonment), but also recommended that appellant be placed on probation for the entire term, it is evident appellant was not prejudiced by the erroneous paragraph regarding punishment in the third reading.

While the jury heard the first third of the verdict-directing instruction four times, the first two-thirds three times, and the entire instruction twice, we find no harm to appellant, as the trial court made it painstakingly clear to the jury that he was attempting to give a correct instruction, that changes had to be made to accomplish that goal, and that appellant and her lawyer were not at fault.

In *State v. Hodge*, 660 S.W.2d 400 (Mo. App.1983), the trial court discovered during closing arguments of counsel that it had omitted a paragraph in a required instruction. The trial court called the omission to the lawyers' attention, read the omitted paragraph to the jury, and corrected the written instruction which went to the jury. Rejecting the accused's complaint of error, this Court held that the omission was corrected before any possible harm, thus no prejudice occurred. *Id.* at 402–03[4]. We find a similar absence of prejudice in the instant case. Appellant's fifth point is denied.

Appellant's third point, the only one not yet considered, concerns an episode during the jury's deliberations. An hour and 32 minutes after the jury retired, the sheriff informed the trial court that the jury wanted to ask a question. With appellant's consent the trial court instructed the sheriff to tell the jury to put the question in writing.

An hour and 20 minutes later the jury sent the trial court a note asking whether the jury could make a recommendation to the court on the verdict for leniency or probation. Appellant's lawyer stated the court should tell the jury "that the law as it presently stands requires that in the event that they find the Defendant guilty that a five-year sentence must be imposed minimum." The trial court had the jury brought to the courtroom and, over appellant's objection, gave the following instruction:

"Instruction No. 13

LADIES AND GENTLEMEN: The law requires the court to instruct the jury in writing at the conclusion of the case. The court's instructions 1 through 12 contain all the law which you require for reaching a verdict. I am unable to give you further instructions. Please return to the jury room, review the court's instructions, and see whether you are able to reach a verdict."

The jury then resumed its deliberations, and 15 minutes later returned the verdict described in the first paragraph of this opinion.

Appellant's third point is:

"The court below erred in refusing to inform the jury, upon their specific inquiry, of the truth of the matter inquired about, to-wit: a recommendation by the jury for leniency or probation, despite the [appellant's] request that the inquiry be answered truthfully, and compounded such error by giving in response to the jury's inquiry a further instruction which was false both in fact and in law, in

consequence of which misinstruction [sic] the [appellant] was denied a fair trial."

Appellant, citing *State v. Gardner*, 600 S.W.2d 614, 624 (Mo.App.1980), *cert. denied*, 449 U.S. 1020, 101 S.Ct. 585, 66 L.Ed.2d 481 (1980), states that common courtesy required the trial court to give the jury some answer to its question, and that the trial court could have properly instructed the jury that the court would take note of any recommendation the jury made but the court was under no obligation to give it any weight. Appellant refers us to *State v. Taylor*, 336 S.W.2d 495, 498–99 (Mo. 1960), where the jury asked the trial court whether, if the accused were found guilty, the jury could recommend a two-year sentence and parole. The trial court, over the accused's objection, instructed the jury that if it found the accused guilty the jury could fix the punishment at two years and could recommend a parole, but under the law a person is ineligible for parole if he has a previous record. The Supreme Court of Missouri held that the instruction was not prejudicially erroneous, noting that the jury assessed the minimum punishment and suggested parole, and that the jury ignored a previous conviction which, under the procedure then in effect, had been submitted as a jury question and had been proven by the state. Nothing in *Taylor* suggests that the failure to instruct the jury that it may recommend leniency or probation is reversible error.

The instruction complained of in appellant's third point is suggested by *Teaney v. City of St. Joseph*, 548 S.W.2d 254, 257 (Mo.App.1977), based on § 14.82, Bench Book for Missouri Trial Judges (1974). Contrary to appellant's position, we find that the instruction was not false or misleading. It was not the task of the jury to determine whether appellant should receive "leniency or probation." The jury's duty was to decide whether appellant was innocent or guilty and, if guilty, to assess punishment within the limits set forth in the verdict-directing instruction. The trial court's earlier instructions had given the jury all the law it required to resolve those issues. Nothing in those instructions informed the jury about the nature of proba-

tion or the conditions that might be imposed on a probationer. Moreover, § 559.012, RSMo 1986, which authorizes a trial judge to place a defendant on probation, provides that the judge may do so if, having regard to the nature and circumstances of the offense and to the history and character of the defendant, the judge is of the opinion that institutional confinement of the defendant is unnecessary for the protection of the public, and the defendant is in need of guidance, training or other assistance which can be effectively administered through probation supervision. None of those issues were submitted to the jury, thus any comment on the subjects of leniency or probation by the jury in its verdict would be outside the issues on which the jury had been instructed and, as the jury's duty was to decide only the issues submitted to it, instruction 13 was correct in telling the jury that the earlier instructions contained all the law the jury required for reaching a verdict.

Appellant's third point is denied and the judgment is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.