**STATE of Missouri, Plaintiff/Respondent,**

v.

**Mark PIERON, Defendant/Appellant.**

**No. 53220.**

Missouri Court of Appeals, Eastern District, Division Four.

June 7, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 20, 1988.

Application to Transfer Denied Sept. 13, 1988.

**304**

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

Dave Hemingway, St. Louis, for defendant/appellant.

SIMON, Presiding Judge.

Defendant, Mark Pieron, was found guilty by a jury in the Circuit Court of St. Louis County of one count of burglary in the first degree, § 569.160, RSMo (1986) (all further references shall be to RSMo (1986)), one count of burglary in the second degree, § 569.170, and two counts of stealing over one hundred and fifty dollars, § 570.030. Judgment was entered in accordance with the verdict and defendant was sentenced, as a persistent offender, to a term of 20 years imprisonment for burglary first degree, a term of 15 years imprisonment for burglary second degree, and two 15 year terms for stealing over one hundred and fifty dollars. All sentences are to run concurrent.

On appeal, defendant claims that the trial court erred in: (1) admitting the hearsay testimony of Detective Brian Forbes into evidence; (2) admitting Officer Nicholas Wild's pretrial identification of a picture of defendant into evidence; and (3) permitting Officer Wild's non-positive identification of defendant at trial. Judgment affirmed.

From the record we glean the following material facts in the light most favorable to the verdict. The charges against de-

fendant stem from two separate burglaries of different homes in the early morning of December 17, 1985. At approximately 12:30 a.m. on the day in question, Mr. August Wegener was awakened by the sound of a loud "pop" as he and his wife slept in their home. A short while later, Mr. Wegener heard something moving in his living room and then saw, from his bedroom, a light come on. Alarmed, Mr. Wegener donned a robe and went into the hallway off his bedroom. He saw a man coming toward him from another bedroom, but as the lighting was very poor he could not see who the man was. All Mr. Wegener could determine was that the man had long hair and was a little taller than himself. Mr. Wegener is between five feet seven inches and five feet eight inches tall. Mr. Wegener "hollered" at the man who then ran, hitting the storm door on his way out.

Upon investigation, Mr. Wegener discovered that a window in his living room had been broken out, and that a sweater belonging to his wife and a telephone were missing from his home. Both items were valued at $207.00.

Mr. Wegener called the police five to ten minutes after the intruder left from a telephone in his basement. Officer Bobbie Thompkins responded to a radio report of the Wegener burglary at approximately 12:59 a.m. Officer Thompkins secured the scene and radioed for the police department's crime identification unit. On cross-examination Officer Thompkins testified that Mr. Wegener described the intruder as being a white male, about five foot eleven inches in height. She stated that Mr. Wegener did not mention that the intruder had long hair, because she would have included it in her report as something important. She said it was possible that she forgot to write it down.

When Officer David Mizell of the identification unit arrived, he photographed the scene and dusted for fingerprints. He testified that his search for prints yielded only one that was usable for identification purposes. The print was lifted from the inside portion of the storm door of the Wegener's home, which the intruder hit on his way out. The state's fingerprint examiner determined that the print obtained by Officer Mizell was of the left palm of the defendant.

The other home burglarized the morning of December 17, 1985, belonged to Bernice Kohm. Travel time from the Wegener home to the Kohm residence is approximately eight minutes by car. The distance between the homes is about five miles. At approximately 1:00 a.m. Ms. Kohm was awakened by the repeated ringing of her doorbell. Ms. Kohm did not turn on any lights and did not answer the door, but she looked out a side window. She saw a man reach into a car that had backed up into her driveway and withdraw a baseball bat. The man then approached Ms. Kohm's house. She could not see the man well and could not determine his race or if he had short or long hair. Upon seeing the man approach, Ms. Kohm fled her house at which point she heard a window breaking. She ran to a neighbor's house and called the police.

Three police officers arrived at the scene within a few minutes after the call was received. They saw the car backed up in the driveway and heard a loud banging noise from inside the house. A passerby informed the officers that someone was still inside the house. Officers Wild and Chesser went behind the house, while Officer Chasteen remained in front. A few minutes later a loud banging again came from inside the residence. Officer Wild yelled to the other officers that he believed that someone was coming out of the back of the house. Officer Wild saw a subject emerge from the back door and ordered him to stop, but the subject did not and took off running. A few seconds later a second suspect ran from the back door. Officer Chasteen, coming from the front of the house, drew his weapon and ordered the second person to halt and he did. Meanwhile, Officers Wild and Chesser gave chase after the first subject, but lost him in nearby woods. The person apprehended, Billy Thaxton, was taken into custody.

The crime scene identification unit was called to the scene of Ms. Kohm's resi-

dence. Officer Salamon took photographs and dusted for fingerprints. Again, only one usable print was found. This print was lifted from the rear view mirror of the car parked on Ms. Kohm's driveway. The evidence showed that this car belonged to defendant's girlfriend. The state's fingerprint examiner determined that the print obtained by Officer Salamon was that of the right thumb of defendant.

Ms. Kohm, upon returning to her house, discovered that a window by the front door had been broken and that her television, purse, and a broiler oven had been taken. Ms. Kohm valued the television at $150.00 and her broiler at $79.00. The police found her purse, television, and broiler on the sidewalk by her yard.

Billy Thaxton was taken to the fourth district police station where he was interrogated by Detective Brian Forbes. Detective Forbes was asked by the prosecutor if he had developed information that led to a second suspect at which point defense counsel interposed a hearsay objection. The trial court initially sustained the objection. However, following a bench conference wherein the prosecutor argued that the information obtained by Detective Forbes was needed to explain his subsequent conduct and therefore fell within an exception to the hearsay rule, the objection was overruled. Detective Forbes then testified that based on his investigation, he obtained the name of Mark Pieron, the defendant, as the individual who had escaped apprehension at the Kohm residence.

A week or so after the burglary, Detective Forbes showed Officer Wild a photo array containing four pictures, including one of defendant, to see if Wild could identify the defendant. Forbes told Wild that a suspect was in the array, although defendant's name was not mentioned. Wild knew from talk around the station that the suspect had the nickname "Speedy." Wild selected the photo of defendant as the person he had seen come from the back door of the Kohm residence.

Defendant filed a motion to suppress the photo identification testimony of Officer Wild. A hearing on the motion was conducted during the trial out of the hearing of the jury. Officer Wild testified that he had only seen the first subject that ran out of Ms. Kohm's residence for a period of a very short time, lasting just seconds, and that the subject had been no closer than fifteen to twenty feet away at the time. Wild testified that it was dark at the time and the lighting was poor, but that he had a personal flashlight trained on the door at the time a subject emerged. Wild testified further that as the subject made his exit, he looked at Wild a second or two after Wild had ordered him to stop. At the hearing on defendant's motion to suppress, Wild described the subject as a young white male, thin build, with "brown—blond —light colored" shoulder length hair. At trial on direct examination, however, Wild testified that the subject was of medium build and medium height. Neither description was contained in any of the police reports made on the incident. Wild testified that, "by far," his best view of the subject had been of the subject's back as he was running. The motion was overruled and Wild was permitted to testify.

Wild could not positively identify the defendant at trial as one of the persons he saw at the scene of the burglary of Ms. Kohm's house. However, he identified the photograph he had selected from the array and testified that he was positive the man there illustrated was the man he saw at the scene of the offense. He could not identify defendant independent of the photograph.

In his first point on appeal, defendant claims that the trial court erred in overruling his objection to the testimony of Detective Forbes regarding his investigation developing information that led to defendant being considered a suspect. Defendant argues that the prosecutor emphasized the fact that Forbes knew that Billy Thaxton was in custody, and this clearly conveyed to the jury that Billy Thaxton had given the information on defendant to Forbes. Defendant argues that such testimony constitutes inadmissible hearsay and violated his due process and confrontation rights. However, defendant's only objection at trial was premised on hearsay and was al-

lowed to be made continuing by the trial court throughout Forbes' testimony.

The following exchange is at issue:

Q. (by the prosecutor) ... [Detective Forbes,] [y]ou had testified one person had been apprehended at the scene, and when you got (sic) the police station at about 2:00 A.M. in the morning that person was already in custody: correct?

A. Correct.

Q. And you knew who that person was?

A. Yes, sir.

Q. And you also received information about a second person was (sic) seen at the scene, at least a second individual?

A. That's correct.

Q. At some point in your investigation did you develop information as to who that second individual might be?

A. Yes, I did.

Q. Did you obtain a name?

A. Yes, sir, I did.

Q. What name?

A. Mark Pieron.

Q. Now, when did you obtain that information, without—I don't want you to go into any details—just the time you obtained that information in the investigation?

A. Probably sometime around 3:00 or 3:30 in the morning, that morning; I arrived at the station around 2:30.

Q. The same date—the 17th?

A. That's correct.

Based on the foregoing, Detective Forbes testified that he presented Officer Wild with the photo array for the purpose of identifying defendant.

It is well established that testimony offered to explain an officer's conduct, rather than to prove the truth of facts testified to, is not inadmissible hearsay. *State v. Pettit*, 719 S.W.2d 474, 476[4] (Mo. App.1986). Such testimony is admissible to explain the officer's subsequent action, and supply relevant background and continuity to the action. *State v. Brooks*, 618 S.W.2d 22, 25[6] (Mo. banc 1981). The triers of fact can be provided a portrayal of the events in question, which is more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or the reasons for the officer's subsequent activities. *Id.*

Here, Detective Forbes did not specifically testify that Billy Thaxton provided him with defendant's name. However, it is no less a violation of the hearsay rule to establish a set of circumstances by the testimony of a witness that invites an inference of hearsay. *State v. Masslon*, 746 S.W.2d 618, 625[8] (Mo.App.1988). Although Detective Forbes' testimony implied a hearsay basis, his testimony was relevant and admissible to explain the commencement of the police investigation of defendant and, specifically, Detective Forbes' presentation of the photo array to Detective Wild. It was not offered to show that the information received was true.

As to defendant's claim that Forbes' testimony violated his rights to confrontation and due process, we find it without merit. As already noted, Detective Forbes' testimony falls within a hearsay exception and was not offered to prove the truth of the matter asserted. When testimony is admissible under any recognized exception to the hearsay rule, then "neither the objection that it is hearsay nor the objection that the accused is denied the right to confrontation and cross-examination is valid." *State v. Spica*, 389 S.W.2d 35, 46[16] (Mo. 1965). " 'Lack of opportunity for cross-examination is not a question involved when evidence is admissible under an established exception to the hearsay rule.' " *Id.* (quoting *Osborne v. Purdome*, 250 S.W.2d 159, 163 (Mo. banc 1952)).

Moreover, defendant's constitutional claims have not been preserved for appellate review. To preserve a constitutional issue for review, which does not involve the statute on which the prosecution is based, an objection must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings. *See State v. Bible*, 750 S.W.2d 676, 678–79 (Mo. App.1988). At trial, defendant's sole objection to the testimony of Detective Forbes was premised on hearsay. No constitution-

al objection was raised until defendant filed his motion for new trial. In any event, reviewing for plain error, we find no manifest injustice or miscarriage of justice because of our disposition of the hearsay point.

Defendant's second and third points relate to the pretrial photographic identification of defendant by Officer Wild. Defendant argues that the trial court erred in admitting Officer Wild's pretrial identification testimony because the identification procedures were impermissibly suggestive and the identification was unreliable.

■ In determining the admissibility of identification testimony that is alleged to have resulted from suggestive pretrial identification procedure, we apply a two prong test: (1) was the pretrial identification procedure suggestive; and if so, (2) what impact did the suggestive procedure have upon the reliability of the identification made by the witness? *State v. Williams*, 717 S.W.2d 561, 564[4] (Mo.App. 1986). However, it is well to remember that reliability, rather than suggestiveness, is the linchpin in determining the admissibility of identification testimony and "reliability is to be assessed under the totality of circumstances." *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)).

■ Defendant complains that the identification process was unduly suggestive in that: (1) Officer Wild was only shown four photographs; (2) the number of days that elapsed between the crime and the identification was too long; (3) Detective Forbes told Officer Wild that a suspect's picture was in the photographic array; and (4) Officer Wild knew the suspect's nickname. Our review of the record convinces us that the identification process was not impermissibly suggestive.

The showing of a single photograph of a suspect to a witness, where there is no improper comment or activity on the part of the police in showing the photograph, does not result in impermissible suggestiveness. *State v. Thomas*, 705 S.W.2d 579, 582[1] (Mo.App.1986). Here, Officer Wild was shown four photographs. That

Detective Forbes informed Officer Wild that a suspect was contained in the photographic array does not vitiate the lineup. Detective Forbes did not suggest what person Officer Wild should pick out. Moreover, Officer Wild testified, based on his police experience, that he knew a suspect would be contained in the photographic array. "[I]t is implicit in lineup procedure (analogous to photographs) that among the persons in the lineup is one who is suspected by the police as the perpetrator of the crime." *State v. Holly*, 697 S.W.2d 250, 252[2] (Mo.App.1985). Nor was the procedure utilized in the instant case suggestive because Officer Wild knew that the suspect had the nickname "Speedy." Nothing in the record demonstrates how the knowledge of the nickname "Speedy" influenced Officer Wild's selection of the photograph. As far as the lapse of time in between the crime and the identification, that is a matter which goes to reliability rather than suggestiveness. *See State v. Williams*, 717 S.W.2d 561, 564 (Mo.App.1986). Thus, we conclude that the identification process was not impermissibly suggestive.

Under the circumstances, our inquiry is at an end, we need not address the question of reliability. The circumstances relating to Officer Wild's out-of-court identification and his non-positive in-court identification go to the weight of his testimony and not to its admissibility.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.