**STATE of Missouri, Plaintiff/Respondent,**

v.

**Ralph McELROY, Defendant/Appellant.**

**Ralph McELROY, Movant/Appellant,**

v.

**STATE of Missouri, Defendant/Respondent.**

Nos. 56907, 60450.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 4, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 2, 1992.

Application to Transfer Denied
Oct. 27, 1992.

44

John Klosterman, Henry B. Robertson, St. Louis, Beth A. Davis, Union, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury found Ralph McElroy guilty of the offenses of first degree murder in violation of § 565.020.1 RSMo 1986 and armed criminal action in violation of § 571.015 RSMo 1986. The trial court sentenced him to concurrent terms of life imprisonment without probation or parole for the offense of first degree murder and three years imprisonment for the offense of armed criminal action. McElroy filed a Rule 29.15 motion for post-conviction relief which was denied after an evidentiary hearing. McElroy appeals both the judgment of the trial court and the order of the motion court.

On his direct appeal McElroy contends that the trial court erred in admitting hearsay testimony of police officers and in overruling his motion to suppress identification testimony. In his appeal from the order of the motion court, McElroy asserts that the motion court erred in denying his motion for post-conviction relief after an evidentiary hearing. In his motion he claimed he was denied his right to effective assistance of counsel when his attorney failed to adequately investigate a known eyewitness. He also contends the trial court erred in refusing to reopen the motion under Rule 75.01. We affirm the judgment of the trial court and the order of the motion court.

### DIRECT APPEAL

The sufficiency of the evidence is not in dispute. The defendant McElroy had been watching three ten or eleven year old boys engaged in a fight in front of a confectionery on the corner of Wabada and Hamilton. The boys were on their way home from school. One of the boys was the victim's brother. Johnny Fleming, the twenty-seven year old victim, drove by in his car accompanied by a friend, Arthur Edwards. Upon seeing the fight, he pulled up in his car, stopped the fight and told his little brother to go home. As his little brother walked home, the other two boys followed him. The victim caught up with his brother in his car on Lotus, chastised all the boys and sent them home. Two women pulled up in a car and the driver called the victim over to talk about sponsors for a baseball team. McElroy had followed the boys on foot and, as the victim headed for the women's car, called out to the victim, "I wish that was my little brother you was pushing on." The victim replied, "Make believe that is your little brother." McElroy said, "If that was my little brother, I'd kick your ass." The victim replied, "Ok, punk you ain't going to do nothing." McElroy then returned to the confectionery

where he told Milton Yancy to get "the suitcase." Yancy went to McElroy's house and got a suitcase which McElroy had shown him earlier in the day. At that time McElroy had opened the suitcase and had shown him a firearm inside. Yancy gave the suitcase to McElroy. McElroy returned to the scene where the victim was speaking to the women in the car. McElroy yelled to the victim, "I'll show you what a punk motherfucker can do." He removed a jacket which was draped over a firearm in his hand and shot the victim, who died from the gunshot wound at the scene.

In two of his points McElroy challenges the admission into evidence of testimony he contends is inadmissible hearsay. In his first hearsay point he claims the trial court erred in overruling his objection to Officer Hollins' testimony that the officer went to defendant's house following an investigation at the scene of the shooting. The testimony was elicited at trial in the context of the following exchange:

Q. [By the prosecutor] And without telling the Court what was said, what did that consist of? Talking to people?

A. [By Officer Hollins] Yes.

Q. And as a result of your investigation, where was the next place that you went, if anywhere, from the scene at Hamilton and Lotus?

MS. ZERMAN: Your Honor, at this time I will object as the answer calls for hearsay.

THE COURT: Overruled.

A. Went to 58—correction. 5918 Lotus.

Q. (By Mr. Jamieson) Lotus or another street?

A. I mean Wabada. I'm sorry.

Officer Hollins then testified to his subsequent investigation at the four-family flat located at 5918 Wabada. McElroy argues that this testimony constitutes inadmissible hearsay which violated his confrontation rights and which prejudiced him by an inference of hearsay. McElroy argues he was further prejudiced when another officer testified to this information without objection and when the prosecutor referred to the information in his closing argument, also without objection.

Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant. *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981). The testimony that the officer went to an address "as a result of his investigation" does not involve an extrajudicial statement. The prosecutor carefully phrased the questions to avoid eliciting an extrajudicial statement. The fact that the officers proceeded to McElroy's house as a result of their investigation explained the officers' subsequent conduct in going to McElroy's house where they continued their investigation. Testimony to explain conduct, rather than to prove the truth of the facts testified to is not inadmissible hearsay. *State v. Pettit*, 719 S.W.2d 474, 476 (Mo.App.1986). Such testimony is admissible to explain the subsequent action of the police officers, to supply relevant background, and to provide continuity to the action. *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981). Even if it could be implied from the testimony that someone had directed the officers to McElroy's house, the testimony was not offered to show that the information received was true, but to explain why the officers proceeded to that address. *State v. Pieron*, 755 S.W.2d 303, 307 (Mo.App.1988). Since there was no error, the repetition of this testimony by another witness and in closing argument without objection did not compound any error.

For his second hearsay point, McElroy challenges under the plain error rule the admission of testimony of two police officers that they had received an anonymous tip that "Milton" had obtained the weapon for McElroy. No objection was made to this testimony at trial. This testimony was offered to explain the officers' subsequent conduct in searching for a "Milton", it was not offered to prove that Milton had obtained the gun for McElroy. It was thus admissible. *Pieron*, 755 S.W.2d at 307. The officers discovered that "Mil-

ton" was Milton Yancy who testified to getting the suitcase containing the gun at McElroy's request and giving it to him. There was no error, plain or otherwise, in the admission of this testimony.

 McElroy's final point on direct appeal is that the trial court erred in overruling his motion to suppress Arthur Edward's photographic and in-court identifications. He argues that these identifications were the product of suggestion. This point was not preserved for review.

In order to preserve for appellate review the contention that a pre-trial photographic identification was impermissibly suggestive, a defendant must normally file a Rule 24.05 motion to suppress the identification, must keep the issue alive by a timely objection at trial, and then must present the issue to the trial court in a motion for a new trial. *State v. Mitchell*, 755 S.W.2d 603, 608 (Mo.App.1988). To obtain review of this contention, a defendant must include in the record on appeal the transcript of the hearing of any pretrial motion to suppress identification. *State v. Hummel*, 652 S.W.2d 749, 750 (Mo.App.1983).

In this case McElroy filed a motion to suppress identification prior to his first trial, which ended in a mistrial. The motion was denied after a hearing. No transcript of that hearing was filed with the record on appeal. McElroy claims to have objected to the identification during the second trial, but the objections to which he refers us in the transcript are objections to the identification and admission of the photographs used, not to the identification by Arthur Edwards.

Specifically, McElroy refers us to the testimony of Sgt. Daniel Nichols who testified to his investigation at McElroy's house. He was asked if he obtained anything at the house and replied that he did. The proceedings continued as follows:

Q [by the prosecutor] Can you describe what those were, please?

A Two Polaroid snapshots.

MS. ZERMAN: Your Honor, at this time I'm going to object with regard to this line of questioning pursuant to an earlier motion.

THE COURT: Pursuant to what?

MS. ZERMAN: A pretrial motion. Can we approach the bench?

(There was a discussion held off the record.)

THE COURT: The objection is overruled.

MS. ZERMAN: Thank you, your Honor.

Detective Nichols then proceeded to testify to how and where he obtained the photographs, how they were marked and stored, and what they depicted. He did not testify to Arthur Edward's identification of anyone in the photograph until ten pages later in the transcript. No objection was made to that new "line of questioning."

McElroy also refers us to the page in the transcript where the state moved the admission of the photographs into evidence. The court asked if there was any objection and the defense attorney replied, "Yes, Your Honor. I object pursuant to my pretrial motion." The court overruled the motion. We do not take either of these trial objections to be objections to Arthur Edward's identification. Rather they were objections to the admission and identification of the photographs, which were the subject of a pretrial motion to suppress on the grounds of unlawful search and seizure. No objection to identification was made at trial either at the time Arthur Edwards identified McElroy or when he testified to his photographic identification.

Since McElroy did not timely object at trial to the identification testimony, he has not preserved this issue for our review. He has not demonstrated any manifest injustice which would allow us to consider the point as plain error.

## POST–CONVICTION APPEAL

For his appeal from the motion court's denial of relief under Rule 29.15, McElroy asserts the motion court erred in overruling his claim that he was denied effective assistance of counsel at trial because his attorney failed to investigate a known eyewitness, Paul Witherspoon. He alleged that Witherspoon would have testified that

McElroy was not present at the time of the shooting.

 Review of a denial of Rule 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Childers*, 801 S.W.2d 442, 446 (Mo.App.1990). The findings of fact and conclusions of law are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Childers*, 801 S.W.2d at 446.

 To prevail on a claim of ineffective assistance of counsel, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do this movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *Childers*, 801 S.W.2d at 447. In order to show prejudice, a movant must show there was a reasonable probability that, but for the errors by his attorney, the jury would have had a reasonable doubt respecting his guilt. *Id.* If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

 McElroy contends he was prejudiced by his trial counsel's failure to investigate and call Paul Witherspoon as a defense witness. Paul Witherspoon was one of the young boys engaged in the fight with victim's brother. McElroy alleged in his motion that Witherspoon would have testified that movant was not at the scene of the incident and could have provided testimony on whether a little girl was or was not involved in the fight, which, he contended, would have affected the credibility of witnesses who had or had not seen a girl involved in the fight. The motion court denied McElroy's claim. The motion court made the following findings of fact:

Movant never mentioned Mr. Witherspoon to Ms. Zerman as a witness who could help. Mr. Witherspoon did not testify at trial but was called as a witness at the hearing in this cause. Mr. Witherspoon testified that he had not been spoken to by anyone from the Public Defender's Office in 1987, 1988 or 1989, and that "nobody knew how to get in touch with me if they wanted to anyway." Ms. Zerman testified that Mr. Witherspoon was spoken to by Gina Shimeall, his attorney at his first trial, and by Ms. Shimeall's investigator. Ms. Zerman found that Mr. Witherspoon's statement was inconsistent within itself and with the testimony of other witnesses that were either going to testify or that had come forward for the defense. Ms. Zerman decided not to use Mr. Witherspoon as a matter of trial strategy because his testimony would have been beneficial to the State.

Based on its findings of fact the motion court concluded:

Movant is not entitled to relief based on his allegations of failure to investigate and call witnesses because the allegations were not supported by evidence at the hearing. The witnesses were investigated and the decision not to use certain witnesses was based on trial strategy.

If this finding is not clearly erroneous, we need not consider McElroy's claim of prejudice.

Paul Witherspoon testified at the evidentiary hearing. He testified he knew McElroy, but an unknown man who was not McElroy appeared with a gun and told the victim to leave the boys alone. He testified that he saw the man with the gun, but he did not see the victim get shot. He testified both that he did and did not see the man shoot. He placed the shooting at the confectionery and testified that by that time no one else but himself was present. He further testified he moved to Louisiana a week after the shooting and had lived there ever since, except for annual visits to his grandmother in St. Louis County. He

had never told anyone that he had seen a man with a gun. He denied ever speaking to anyone from the public defender's office.

Ms. Zerman testified she received McElroy's file from his previous counsel, Gina Shimeall, and had thoroughly reviewed the file, the trial strategy employed in defendant's first trial, and the pretrial investigation with Ms. Shimeall. Ms. Zerman testified that Ms. Shimeall and her investigator had located Paul Witherspoon and he had come down to the office and spoken with both of them. Ms. Shimeall had not called Witherspoon to testify in the first trial because his statements about the location of the fight, the location of the shooting and the number of people present were internally inconsistent and differed with the statements of the other defense witnesses. Ms. Shimeall felt that Witherspoon's testimony would not have advanced the defense strategy to attack identification and the facts, but would have worked against defense strategy, and the inconsistencies would have benefitted the state. Ms. Zerman also testified that she agreed with Ms. Shimeall's strategy which was used in the first trial and she followed that same strategy in the second trial for the same reasons.

If a potential witness' testimony would not unqualifiedly support the defendant, the failure to call such a witness does not constitute ineffective assistance of counsel. *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992). Witherspoon's testimony was inconsistent with the testimony of other witnesses at trial who viewed the shooting and with the physical evidence of where the shooting took place. His testimony would not have provided a viable defense nor would it have unqualifiedly supported defendant's theory of misidentification.

The selection of witnesses and the introduction of evidence are questions of trial strategy. *Leisure*, 828 S.W.2d at 876. The decision not to call a witness as a matter of trial strategy is virtually unchallengeable. *Id.* at 875. The trial court's finding that the witness was investigated and defense counsel's decision not to call

him was a matter of trial strategy which was not clearly erroneous.

McElroy next argues that the motion court clearly erred in denying his Rule 75.01 motion to reopen his Rule 29.15 motion on the grounds that the trial court had lost jurisdiction. Such motions must be filed within 30 days after the entry of judgment while the trial court retains control over the judgment. Rule 75.01. McElroy's motion was filed 31 days after the entry of judgment. The trial court did not err in denying the motion on jurisdictional grounds.

The judgment of the trial court and the order of the motion court are affirmed.

CARL R. GAERTNER, P.J., and SIMON, J., concur.