**STATE of Missouri, Respondent,**

v.

**Shelby HARRIS, Defendant/Appellant,**

**Shelby HARRIS, Movant/Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 60678, 62199.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 15, 1993.

---

**4.** We reject Hancock's argument that wife failed to properly preserve her hearsay objection for our review.

Brad B. Baker, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

Defendant, Shelby Harris, waived a jury trial and was convicted by the trial court of murder in the second degree, in violation of § 565.021.1 RSMo 1986, and armed criminal action, in violation of § 571.015.1 RSMo 1986. The trial court sentenced defendant to twelve year prison terms for each of the two offenses, to run concurrently. Defendant appeals from his convictions and from the denial of his Rule 29.15 motion for postconviction relief. We affirm.

The facts in evidence most favorable to the state's case established that defendant moved into a house in Jennings, Missouri, sometime during the fall of 1988. Approximately six months later the victim, Margaret Carter, moved into the home with defendant. Thereafter, in October, 1989, the

City of Jennings notified defendant that he was in violation of the occupancy permit, which did not include Carter as a resident of the house. Defendant filed an application to change the occupancy permit, fraudulently listing Carter as a relative. The occupancy permit, however, was never modified to allow Carter to live in the house.

On October 24, 1989, defendant arrived home from work at approximately 5:25 p.m., and a deputy sheriff was on the front porch with an eviction notice. Defendant became upset when he received the eviction notice. He and Carter had previously talked about Carter moving out of the house, and she had agreed to move out within a few days. Defendant had bought a padlock for the front door to prevent Carter from entering the house because at times when Carter was drinking she would get violent and kick defendant. At about 10:00 p.m., Carter arrived home and defendant talked with her about moving out; defendant told Carter he did not want to lose the house. Carter became upset and left. About ten or twenty minutes later, defendant went to bed. He put the padlock on the front door.

At approximately 1:00 a.m., defendant was awakened by Carter beating at the front door. He remained in bed for fifteen to twenty minutes, during which time Carter continued beating on the front door and a bedroom window. When Carter began breaking glass in some windows, defendant got out of bed. He saw Carter at the kitchen door. As Carter was coming in the house through the kitchen door, defendant grabbed his loaded .22 caliber rifle from the bedroom and hid it in the living room behind some curtains.

After entering in the house, Carter went into the bedroom, took some of her clothes out of the closet, and put them on the bed. She then told defendant he was going to take the clothes out to her car. Defendant told Carter he was not taking anything anywhere, and that he would throw the clothes out onto the grass. Defendant then told Carter she had to go, and Carter responded, "[p]ut me out." Defendant grabbed Carter by the ankles, and started pulling her out of the bed. Carter then told defendant she had something in her car for him. Carter went out to the car and returned with a forty ounce bottle of beer; defendant and Carter drank the beer in the house. After finishing the beer at approximately 1:30 a.m., defendant told Carter she still had to go. Carter did not leave, and defendant said he was going to call the police. Carter went to the front door and held it open, to make sure the police "took" defendant. While Carter was standing in the doorway, defendant started to push her out the door. Carter grabbed defendant's wrists, pulled him out the door with her, and kicked him in the stomach. The two tussled on the front porch for a short time. As defendant started back inside the house, Carter followed, but defendant pushed her back out onto the front porch and locked the door. Carter "just went crazy" and started breaking windows in the house. Defendant grabbed the rifle and went to the front door.

Carter stood on the front porch and said to defendant, "Shelby, are you going to shoot me?" or "[d]o you want to shoot me?" Defendant responded, "[y]eah, I will", or "[y]es, I do." Defendant, who was standing at the front door approximately eight feet from Carter, then fired his rifle in her direction. Carter fell to the ground; she died of one gunshot wound to the head.

After shooting Carter, defendant called the police and reported a burglary. He first told the police that he had believed a burglar was trying to break in, and shot the rifle from inside the house, not realizing it was Carter on the porch. Defendant later changed his story, and admitted to the police that he knew Carter was on the porch when he fired the gun. Defendant prepared a written confession. The confession stated that defendant and Carter argued on the porch, and when he tried to go back into the house, Carter also tried to get in, and defendant retrieved his rifle, firing several times in the air. Defendant contended that when he shot the rifle, he only intended to scare Carter.

At trial, defendant testified he had not intended to harm Carter, but thought he could shoot the rifle into the air and just scare her. He further testified that he had fired the rifle nine times at two different intervals. First, he shot the rifle five times up in the air to his left while standing in the front doorway. It was after he first shot the rifle that Carter asked defendant whether he was going to shoot her. Defendant told Carter that he was, and stood in the front doorway, aimed closer to Carter and shot the rifle again three or four times up in the air. Defendant testified he told Carter he was going to shoot her just to scare her into leaving.

Two neighbors testified at trial. They both stated they heard loud talking or arguing coming from defendant's home shortly before Carter's death. The neighbors each testified they heard only two or three shots, and denied there were any more than three shots fired. The police found only three shell casings at the scene, and found no indication of any bullet holes in the ceiling of the front porch.

Defendant's sole point on the direct appeal is that the trial court erred in overruling his motion for judgment of acquittal because the state failed to make a submissible case of second degree murder. Defendant claims there was insufficient evidence to convict him of second degree murder, as the only evidence presented by the state was that defendant acted recklessly in killing the victim, and not that he knowingly caused her death.

■■■ To determine whether the state made a submissible case, a reviewing court accepts as true all evidence and permissible inferences which support the verdict and rejects all contrary evidence and inferences. *State v. Harris*, 825 S.W.2d 644, 645 (Mo.App.1992). A defendant commits murder in the second degree if he or she "knowingly causes the death of another person...." § 565.021.1 RSMo 1986. The state is not required to present proof that defendant infallibly knew that a certain result would follow in order to show he or she acted knowingly. *Harris*, 825 S.W.2d at 647. The state need show only that the

defendant must have known the result was "practically certain" to follow from his or her conduct. *Id.* The fact there may have been no direct proof of defendant's mental state is not determinative, as direct proof of required mental state is seldom available. Circumstantial evidence and permissible inferences from it are acceptable, and generally will provide the necessary proof. *State v. Reynolds*, 782 S.W.2d 793, 797 (Mo.App.1989).

■■ Here, defendant wanted Carter to move out, and had put a padlock on the front door to keep Carter out of his home. Defendant argued with Carter about her moving out immediately prior to her death; the argument was loud enough for the neighbors to hear. Defendant pushed Carter out the front door, tussled with her on the front porch, and then went inside to retrieve his rifle. Defendant fired a .22 caliber rifle towards Carter from a distance of only eight feet. Although defendant claims he shot into the air from the front door, no bullet holes were found in the ceiling of the front porch. The evidence is that defendant intentionally shot the rifle, *See State v. Black*, 611 S.W.2d 236, 240–41 (Mo.App.1980), and that he was aiming close to Carter, not shooting the rifle indiscriminately. *See State v. Baldwin*, 808 S.W.2d 384, 394 (Mo.App.1991). The evidence and the reasonable inferences which may be drawn from the evidence are sufficient to support the conviction for second degree murder.

In point two, defendant contends the motion court clearly erred in denying his Rule 29.15 motion. Defendant asserts that he was denied effective assistance of counsel in that his trial counsel failed to interview and call two character witnesses, Rosemary Calcaterra and Bridget Scott.

■■ In a Rule 29.15 motion hearing, the defendant has the burden of proving his or her grounds for relief by a preponderance of the evidence. *State v. Schaal*, 806 S.W.2d 659, 667 (Mo. banc 1991); Rule 29.-15(h). Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court are clear-

ly erroneous. *State v. Rowe*, 838 S.W.2d 103, 112 (Mo.App.1992); Rule 29.15(j). The findings and conclusions of the motion court are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Rowe*, 838 S.W.2d at 112.

 To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that his or her defense was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Trial counsel is strongly presumed to have rendered adequate assistance. *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. To prove deficient performance, a defendant must show that counsel's acts or omissions were outside the range of professional competence. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. In order to establish prejudice, a defendant must show there was a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. If a defendant makes an insufficient showing of either the deficient performance component or the prejudice component, the court need not address the other component. *Id.* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

The selection of witnesses is a question of trial strategy. *State v. McElroy*, 838 S.W.2d 43, 49 (Mo.App.1992). A decision not to call a witness as a matter of trial strategy is virtually unchallengeable. *Id.* Courts have found the failure to call character witnesses does not constitute ineffective assistance of counsel, as the decision has been viewed as a matter of trial strategy or to be nonprejudicial. *See, e.g., State v. Schaal*, 806 S.W.2d 659, 668 (Mo. banc 1991); *State v. Perkins*, 831 S.W.2d 637, 641 (Mo.App.1992).

At the evidentiary hearing, both witnesses testified only as to defendant's character; they stated that defendant had a reputation for peacefulness and truthfulness. Neither witness testified directly to the issue of whether defendant committed the crimes charged. Trial counsel testified that as a general rule he does not believe character witnesses are effective in criminal cases. Counsel further testified he had discussed with defendant the possibility of using character witnesses, but, after defendant made the decision to waive a jury trial, he did not further consider using character witnesses because he believed defendant was an articulate witness who could convey what had occurred. The motion court's finding that trial counsel's decision not to call the two character witnesses was a matter of trial strategy is not clearly erroneous.

The judgment of the trial court and the order of the motion court are affirmed.

REINHARD and CRIST, JJ., concur.