STATE of Missouri, Respondent,

v.

Kenneth YORK, Appellant.

Kenneth YORK, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19994, 20726.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 25, 1996.

Rosalynn Koch, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, David G. Brown, Asst. Attorney General, Jefferson City, for respondent.

MONTGOMERY, Chief Judge.

After a jury trial, Kenneth York (Defendant) was convicted of the class A felony of forcible rape, § 566.030, RSMo Supp.1992, and armed criminal action, § 571.015, RSMo 1986. He was sentenced as a prior and persistent offender to life imprisonment for rape and fifty years for armed criminal action, the sentences to be served consecutively. After his conviction, he filed a Rule 29.15 motion for postconviction relief which was denied after an evidentiary hearing.

Defendant appeals the judgment of conviction in his criminal case (No. 19994) and the denial of his Rule 29.15 motion (No. 20726). The appeals were consolidated pursuant to Rule 29.15(*l*) as it existed on the date the motion was filed.[1]

In No. 19994, Defendant contends the trial court erroneously (1) refused to give his proffered alibi instruction and (2) sentenced him on both convictions, in violation of his right to be free from double jeopardy. In No. 20726, Defendant claims his trial counsel was ineffective for failing to call some of his family members as alibi witnesses. This Court affirms the judgment of conviction in the criminal case and the denial of the Rule 29.15 motion.

*No. 19994*

Defendant does not challenge the sufficiency of the State's evidence. The evidence in the light most favorable to the verdict follows.

---

**1.** Rule references are to Missouri Rules of Court (1995). Defendant was sentenced on December 9, 1994. His Rule 29.15 motion was filed on April 26, 1995. *See* Rule 29.15(m), Missouri Rules of Court (1996).

In 1993 the victim, a 66–year–old widow, lived alone in a rented home in the small town of Walker, Missouri. She suffered from emphysema and was "on oxygen" twenty-four hours a day. She also suffered from arthritis which caused her limbs to be somewhat inflexible.

On June 4, 1993, the victim was talking on the telephone to her friend, Reba Huff, between 3:50 and 4:00 p.m. The victim heard a knock on her front door and answered it. A man, later identified as Defendant, inquired if her "pop-up" camper in the front yard was for sale. The victim acknowledged that it was possibly for sale and gave him permission to look at it. She returned to her telephone conversation, and after 20 to 30 minutes, the victim returned to her front door to see if Defendant had raised the camper. She observed Defendant walking toward the rear of her house at that time. She noticed that the camper had not been raised and only one of the four "supports" had been removed, an approximate two-minute job.

Defendant returned to the front porch where he and the victim talked for a few minutes. When the victim went inside the house for oxygen, Defendant followed her inside without an invitation. She told him to sit on the sofa while they discussed the camper sale.

After concluding that discussion, Defendant announced he was interested in buying the house and began looking in some of the other rooms. The victim advised him that the house was not for sale. Eventually Defendant asked her for sex. The victim told him to leave and attempted to push him out the front door. Defendant foiled her efforts and locked the front door behind him. He then calmly told the victim he was going to rape her.

Defendant dragged the victim into the bedroom. She resisted by various means until Defendant produced a knife, held it against her throat, and threatened to kill her. Defendant consummated the attack by having sexual intercourse with the victim against her will.

From the beginning of her encounter with Defendant, the victim was observant of the time at which various events took place. After looking at the clock on her wall, the victim observed it was 4:50 p.m. and thought that the Defendant had been outside longer than necessary to put up the camper. During the actual rape the victim glanced at her watch and observed that the time was 5:15 p.m. After Defendant got out of bed, the victim observed that the time was 5:35 p.m. Defendant ordered the victim not to move for five minutes or he would kill her and her family. He came back in the bedroom at the end of five minutes and again told the victim not to move for five more minutes. Defendant left the victim's home sometime between 5:40 and 5:50 p.m.

The victim soon called her daughter who reported the attack to law enforcement officers. The victim was hospitalized overnight. She described her attacker to the investigating officers and described his vehicle as a noisy older model car which was maroon with a cream- or white-colored top.

Debra Rider [2] and Chester Bruce, Jr., testified for the State. Rider and Bruce lived together in a mobile home at the end of a short dead-end lane which intersects Highway 54 near Walker. They were sitting outside their home between 4:15 and 4:30 p.m. on the day in question when a noisy red car with a white top drove down their lane at a fast rate of speed. The car stopped abruptly, turned around, and left before reaching the mobile home.

Bruce and Rider got in his truck and followed the car which was traveling east on Highway 54. The car turned north into the small town of Dederick and stopped. Bruce stopped near the car and asked the driver about his fast driving. The driver replied that he was looking for Schell City. Bruce indicated that Schell City was north of them, but the driver left traveling south and turned east on Highway 54. Again, Bruce and Rider followed. Finally, the car stopped at the Cedar–Vernon County line, and Bruce also stopped. He asked the driver why he went in the opposite direction from Schell City.

---

**2.** Debra Rider is also known as Debra Lee Smith.     We will refer to her by the former name.

The driver said he was looking for his aunt who delivered the newspapers in that area.

Because of the driver's erratic driving and his possible intoxication, Bruce indicated that he should call the police. The driver pleaded with him not to do so. As Bruce left to get in his truck, the driver sped away westbound on Highway 54 toward Walker.

Bruce and Rider returned to their home, a five-mile trip from the county line, and arrived about 4:55 p.m. They advised the sheriff of their encounter after learning of the rape in Walker.

Evidence of the various distances involved in this case reveals that Walker is 12.8 miles from the Vernon–Cedar County line. Walker is located on Highway C 2.4 miles north of Highway 54. The home of Bruce and Rider and the town of Dederick are located between Walker and the Vernon–Cedar County line.

The victim's newspaper was delivered by Defendant's aunt, Wanda Phillips. Defendant lived with her during the month of May 1993 and went with her on the newspaper route two or three times that month. After much reflection, the victim recalled that her assailant had once delivered the newspaper to her while she sat in her pickup in her driveway. She recalled that he was riding with her regular newspaper delivery person.

Eventually the victim identified Defendant's photograph in a photographic lineup as her assailant. Bruce and Rider also identified Defendant's photograph as the driver of the car they pursued. All three people identified Defendant at trial as the person they encountered on June 4, 1993.

█ In his first point, Defendant claims the trial court erroneously refused to give Defendant's proffered alibi instruction and gave Instruction No. 9 instead. Defendant claims his alibi instruction was justified by the evidence and should have been given because the victim testified that her assailant was at her home between 3:50 to 4:00 p.m. and 5:40 p.m., except for a 20– to 30–minute period when she did not see him. As a result, Defendant alleges he did not receive a fair trial or a properly instructed jury.

Instruction No. 9, patterned after MAI–CR 3d 308.04, reads as follows:

One of the issues in this case is whether the defendant was present at 110 West Southern, City of Walker, County of Vernon, State of Missouri, a residence possessed by [victim], between 4:50 p.m. and 5:40 p.m. on June 4, 1993. On that issue, you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place the offense is alleged to have been committed.

2. If the evidence in this case leaves in your mind a reasonable doubt that the defendant was present at 110 West Southern, City of Walker, County of Vernon, State of Missouri, a residence possessed by [victim], between 4:50 p.m. and 5:40 p.m. on June 4, 1993, then you must find the defendant not guilty.

The only difference between Instruction No. 9 and Defendant's proffered instruction is the time frame. Defendant's proffered instruction recites "between 4:00 p.m. and 5:40 p.m." as opposed to "between 4:50 p.m. and 5:40 p.m."

█ A defendant is entitled to an instruction on any theory of his case which tends to be established by the evidence. *State v. Rickman*, 920 S.W.2d 615, 617 (Mo. App.1996). The sufficiency of evidence warranting submission of an instruction on alibi is a question of law for the court. *Id.*

█ The premise of an alibi instruction is that the defendant was not at the place where the offense was committed. *State v. Williamson*, 877 S.W.2d 258, 260 (Mo.App. 1994). An alibi instruction will not be given unless there is supportive evidence that the defendant was somewhere other than the place of the crime during the entire time it was being committed. *Id.* The evidence must be sufficient to create a reasonable doubt in the average juror's mind as to defendant's presence at the scene of the crime. *State v. Hall*, 761 S.W.2d 691, 693 (Mo.App. 1988).

█ Said another way, "[a]libi is an allegation that the accused was at a place other

# 189

than the place where the crime was committed at the time it was committed. It is designed to prove that under the circumstances in evidence, it was impossible for the defendant to have participated in the commission of the offense." *State v. Phegley*, 826 S.W.2d 348, 355 (Mo.App.1992).

■ Thus, the law is clear that an alibi instruction must relate to the time during which the crime was committed. In this case, the crime was committed between 4:50 p.m. and 5:40 p.m. Clearly, there was no evidence that the crime was committed before or after this particular time frame.

The Notes on Use under MAI–CR 3d 308.04 state that "[w]here the evidence is sufficient to support the giving of an alibi instruction, the date, time, and place must be stated with sufficient detail in the verdict directing instruction to contravene the alibi evidence." Both the verdict director in this case and Instruction No. 9 referred to a time frame of 4:50 p.m. to 5:40 p.m.

We are convinced that Instruction No. 9 was the instruction Defendant was entitled to receive under the evidence. Under any view of the evidence, no criminal act occurred prior to 4:50 p.m. Although Defendant appeared at the victim's home just before 4 p.m. and reappeared around 4:50 p.m., Defendant was not seen by the victim for up to 30 minutes of that time period. Perhaps the jury believed that Defendant's encounter with Rider and Bruce occurred during that 30–minute interval and they were mistaken on the times when they saw him.

On the other hand, the jury could have believed that Rider and Bruce last saw Defendant at 4:50 p.m. at the Cedar–Vernon County line, some 13 miles from the victim's home, which would have made it impossible for Defendant to enter the victim's home at 4:50 p.m. as she testified. Thus, Defendant received an alibi instruction which the evidence supported. Instruction No. 9 is not erroneous because the jury failed to believe the alibi evidence.

■ Defendant also argues that he was "effectively denied consideration of his alibi" because of the trial court's response to a note from the jury. The note states, "Instruction 5 reads time from 4:50 to 5:40. The jury wants to know where this time originated. Do we ignore all other times given to us during the trial." Defendant claims the court erroneously answered by advising that "the jury should follow the instructions as given to you by the Court."

■ If this argument is presented as an allegation of error, it appears nowhere in Defendant's point relied on. An appellate court reviews only those issues raised in the points relied on. *State v. Hill*, 812 S.W.2d 204, 208 (Mo.App.1991). If the argument is presented in support of the issue raised in Point I, it lacks merit.

Defendant interprets the trial court's response as advising "the jury not to consider any evidence regarding [Defendant's] whereabouts prior to 4:50 p.m." As a result, Defendant asserts that the jury would have acquitted him if they had been allowed to consider the evidence of his earlier whereabouts. This ingenious argument is not supported by citation of authority or by the record.

First of all, the jury was not advised to disregard any evidence of Defendant's whereabouts prior to 4:50 p.m. The jury was only advised to follow the instructions. Consideration of Defendant's whereabouts prior to 4:50 p.m. was not precluded by any instruction. Secondly, the crime occurred after 4:50 p.m. If the jury had chosen to believe the alibi evidence (at 4:50 p.m. Defendant was thirteen miles away from the victim's home), the jury would have necessarily given due consideration to Defendant's entire encounter with Rider and Bruce which occurred prior to 4:50 p.m. Point I is denied.

■ In his second point, Defendant contends he was subjected to double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution by being convicted and sentenced both for aggravated rape and armed criminal action. Because this claim is made for the first time on appeal, Defendant seeks plain error review.

Defendant argues that his "convictions for both rape, aggravated by the use of a dan-

gerous instrument and for armed criminal action constitute double jeopardy because each rests on the same facts." Defendant emphasizes that he "does not complain of his conviction of rape and armed criminal action, but the aggravated rape and armed criminal action do in fact constitute double jeopardy." Defendant is mistaken.

As stated in *State v. Perkins*, 786 S.W.2d 191 (Mo.App.1990), "[a]ny doubt about the constitutionality of trying a defendant both for armed criminal action and an underlying felony (i.e. a felony committed with the use of a deadly weapon) was laid to rest in *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)." In *Hunter*, the United States Supreme Court squarely addressed the issue of "whether the prosecution and conviction of a criminal defendant in a single trial on both a charge of 'armed criminal action' and a charge of first degree robbery—the underlying felony—violates the Double Jeopardy Clause of the Fifth Amendment." *Id.* at 360, 103 S.Ct. at 675. The Supreme Court resolved this issue by saying that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* at 366, 103 S.Ct. at 678. After noting "the Missouri Legislature has made its intent crystal clear," *Id.* at 368, 103 S.Ct. at 679, the Court held:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger [Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368–69, 103 S.Ct. at 679.

In this case, the crystal clear intent of the Missouri legislature is reflected in § 571.017, RSMo 1986, which provides that "[n]othing contained in any other provision of law, except as provided in subsection 4 of section 571.015,[3] shall prevent imposition of sentences for both armed criminal action and the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Thus, the Missouri legislature has specifically authorized cumulative punishment for forcible rape and armed criminal action, regardless of whether both statutes proscribe the same conduct, i.e., the use of a dangerous instrument in the commission of the underlying felony.

We find no plain error resulting in manifest injustice or miscarriage of justice by the trial court's imposition of cumulative sentences in this case. *See State v. Perkins, supra* (no violation of double jeopardy clause results from convictions for second degree assault and armed criminal action); *State v. Henderson*, 698 S.W.2d 596 (Mo.App.1985) (no violation of double jeopardy clause results from convictions for assault with a deadly weapon and armed criminal action). Point denied.

### No. 20726

Defendant's lone point on this appeal asserts that the motion court erroneously denied his Rule 29.15 motion because he received ineffective assistance of counsel at trial. Defendant alleges his trial counsel failed to offer the alibi testimony of his mother, Lillie York, his brother and sister-in-law, Steven and Tina York. According to Defendant, their testimony would have shown that "they saw [Defendant] at Lillie York's home in Belton between 5:30 and 6:00 p.m. on June 4, 1993, and [Defendant] could not have been at [victim's] home at the time of the rape."

As to the issue raised in this point, the motion court found:

> 12. Movant alleges in paragraph 8.a.(1) of the amended motion that trial counsel was ineffective for not calling alibi witnesses who would have placed Movant in [Belton], Missouri as early as 5:30 p.m. the day of alleged rape. Movant claimed that trial counsel should have called Lilly York, Tina York, Steve York and Ronald York, who would have testified that they saw

---

**3.** The provisions of subsection 4 of § 571.015 do not apply to this case.

Movant at Lilly York's [Belton], Missouri home on June 4, 1993 at or after 5:30 p.m. making it impossible for Movant to have been at the alleged victim's house at the time the alleged victim claims she was raped. Both Joe Zuzul and Dan Dickey testified at the evidentiary hearing that those four alibi witnesses were not called as a matter of trial strategy. They testified that two independent State witnesses, Chester Bruce, and Debbie Rider, saw the Movant on highway 54 at the Cedar and Vernon County line as late as 4:50 p.m. on the same date. [J]oe Zuzul and Dan Dickey testified that because the Movant could not have traveled the ninety miles to [Belton] after 4:50 p.m. to have arrived in [Belton] as early as 5:30 p.m., that the testimony of the alibi witnesses would have not been helpful and would have in fact not fit in to the time line that Movant had to accept because of Bruce's and Rider's testimony. Joe Zuzul and Dan Dickey further testified that Bruce and Rider were alibi witnesses in a sense for Movant at trial. They testified that because Rider and Bruce saw Movant approximately ten to fifteen miles from the alleged victim's home at a time when the alleged victim had testified the assailant was at her home in Walker, Missouri, that Bruce and Rider were helpful to Movant and that testimony from the [Belton] alibi witnesses would have been confusing and contradictory for the jury. The court finds that trial counsel chose not to call Lilly York, Tina York, Steve York and Ronald York as a matter of trial strategy in the best interests of the Movant.

■ In order to prevail on a claim of ineffective assistance of counsel, Defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Movant has the burden of proving both grounds by a preponderance of the evidence in order to prevail. *Id.;* Rule 29.15(h). Our review of the denial of postconviction relief is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 29.15(j); *Sanders*, 738 S.W.2d at 857.

■ The selection of witnesses is a question of trial strategy. *State v. Harris*, 854 S.W.2d 853, 857 (Mo.App.1993). A decision not to call a witness as a matter of trial strategy is virtually unchallengeable. *Id.*

Here, Defendant's trial counsel reasonably determined that the jury was more likely to believe the Bruce and Rider alibi evidence as compared to the alibi evidence from Defendant's family members. Trial counsel was aware that the jury could not believe the alibi evidence from both Bruce and Rider and Defendant's family members. He reasonably chose to stand on the alibi evidence coming from impartial and disinterested witnesses rather than present conflicting alibi evidence from partial and interested witnesses. This choice is purely a question of trial strategy.

The motion court's findings are supported by the record and are not clearly erroneous. This point lacks merit.

The judgment of conviction in No. 19994 is affirmed. The order denying Defendant's Rule 29.15 motion in No. 20726 is affirmed.

CROW, P.J., and PARRISH, J., concur.